[Civ. No. 66387. Second Dist., Div. Two. Sept. 21, 1983.]

STURGEON PETROLEUMS, LTD., et al., Plaintiffs and Appellants, v. MERCHANTS PETROLEUM COMPANY et al., Defendants and Respondents.

COUNSEL

Carmack, Johnson & Poulson and Lynn O. Poulson for Plaintiffs and Appellants.

Irell & Manella, Edmund M. Kaufman, S. Thomas Pollack, Jon W. Davidson, Weissmann, Wolff, Bergman, Coleman & Schulman, John A. Schulman and Allison B. Stein for Defendants and Respondents.

OPINION

**GATES, J.**—Sturgeons Petroleums, Ltd. (Sturgeon) and Northwestern Oil Management (Northwestern) appeal from the summary judgment entered in favor of defendants Damson Oil Corporation (Damson), Merchants Petroleum Company (Merchants), Barrie M. Damson, Roger Ball, Marvin Billet, J.R. Bozman, Irwin L. Hearsh, Alvin Meyrowitz, William W. Morris and Robert L. Sielaff. The determinative facts are not in dispute.

On August 18, 1977, Merchants and Damson jointly announced a plan whereby Merchants would be merged into Damson. The joint proxy statement issued by the two companies on December 1, 1978, included, inter alia, a statement in opposition to the proposed merger by John Fitzpatrick, a member of Merchants' Board of Directors and president of appellants Sturgeon and Northwestern. Notwithstanding Fitzpatrick's opposition, the holders of an "overwhelming" number of the outstanding Merchants shares approved the plan at the annual shareholders' meeting held on February 7, 1979.

On February 9, 1979, a notice of the approval of the merger was sent to appellants, who had voted against it. Pursuant to section 1301 of the Corporations Code, the notice, which was accompanied by copies of sections 1300-1304,[1] contained a statement of the price determined by the corporation to represent the fair market value of the dissenting shares, and a brief description of the procedure to be followed in the event appellants desired to exercise their shareholders' rights under such sections.

In early March, appellants demanded their Merchants shares be purchased at their fair market value, asserted to be $12 per share. Appellants at that

---

[1]Unless otherwise specified, all statutory references herein are to the Corporations Code. Copies of sections 1300-1304 are attached as an appendix to this opinion.

time also submitted their certificates "to be stamped or endorsed with a statement that the shares are dissenting shares or to be exchanged for a certificate of appropriate denomination so stamped or enclosed." The requested legend was placed on the certificates.

In an effort "to avoid further controversy and unnecessary and expensive litigation," Damson on May 29, 1979, offered to purchase appellants' "shares with respect to which [they] had perfected [their] dissenter[s'] rights at a price of $3.50 per share," rather than the $2.94 which had been offered by Merchants in its notice of February 9. In so doing, Damson expressed its belief that the $2.94 figure "was fair and reasonable." When this failed to resolve the question of the stock's value, Damson on July 10, 1979, filed an action (Damson Oil Corporation v. Sturgeon Petroleums Ltd., et al., Superior Court No. C-290973) under section 1304 in order to obtain a judicial determination of the fair market value of appellants' dissenting shares.

On February 6, 1980, appellants filed the instant action for damages against Merchants, members of its board of directors, Damson and Damson's president and board chairman, Barrie Damson. In their first amended complaint filed August 21, 1980, appellants set forth eight causes of action, alleging breach of fiduciary duty, fraud, conspiracy, and violation of California Corporate Securities Law.

On May 13, 1981, respondents filed their motion for judgment on the pleadings, or in the alternative, for summary judgment. Their summary judgment motion was granted on July 24, 1981, as a result of the court's determination that appellants had presented no triable issue of fact in that they owned "'dissenting shares,' as defined in Chapter 13 of the California General Corporation Law [GCL] and are entitled to appraisal of their shares thereunder, that appraisal constitutes the exclusive remedy of shareholders entitled to appraisal, and that the existence of the appraisal remedy precludes maintenance of any of the causes of action stated in the complaint . . . ."

In challenging the grant of the summary judgment,[2] appellants first assert "it is not at all clear [they] owned 'dissenting shares.'" Such a claim is

[2]We observe in passing that appellants and respondents, after pointing out that an opinion which has been ordered nonpublished by our Supreme Court cannot be cited as precedent, discuss at length whether the reasoning in one such case would be controlling here. We forego the temptation to enter this fray and have not considered that decision for purposes of this appeal. (Cal. Rules of Court, rule 977; *Powers* v. *Sissoev* (1974) 39 Cal.App.3d 865, 872, fn. 8 [114 Cal.Rptr. 868].)

utterly refuted by the present record. Uncontroverted statements contained in declarations and affidavits submitted by respondents in support of their summary judgment motion clearly demonstrate appellants' shares come within all of the descriptions set forth in subdivision (b) of section 1300 and are therefore "dissenting shares" as that term is used in Chapter 13 of the GCL. In addition, appellants' own letters and admissions establish that they voted against the merger, submitted their shares for endorsement and demanded the shares be purchased at their fair market value. ■ More importantly, appellants characterized themselves as holders of "dissenting shares" in their verified first amended complaint, which in itself constitutes a conclusive concession of the truth of the matter. (*Brecher* v. *Gleason* (1972) 27 Cal.App.3d 496, 499, fn. 1 [103 Cal.Rptr. 831]; *Walker* v. *Dorn* (1966) 240 Cal.App.2d 118, 120 [49 Cal.Rptr. 362]; *In re O'Brien Machinery, Inc.* (1964) 224 Cal.App.2d 563, 569 [36 Cal.Rptr. 782].)

Appellants further contend that even if they are dissenting shareholders, respondents should be estopped from so asserting because they misled appellants into believing that, as shareholders, they had "a six-month period in which to decide whether to file a complaint or accept the terms of the merger offer, if [they took] the 'initial' steps necessary to 'preserve' that right." Specifically, they argue the failure of the notice of the approval of the merger to disclose the right of the *corporation* to file suit under section 1304 "snatch[ed] from [appellants] the power to decide whether to accept the merger . . . ." ■ Section 1301 requires a corporation to provide only "a brief description of the procedure to be followed if the *shareholder* desires to exercise the *shareholder's* right under [sections 1300-1304]." (Subd. (a); italics added.) This was done and appellants were also provided with the requisite copies of the foregoing code sections.[3] Respondents were charged with no corresponding duty to advise appellants of the corporation's rights. Thus, even assuming appellants were under the mistaken belief that they "could choose to let their dissenter status lapse by not filing suit within six months,"[4] no triable issue of fact would thereby be created.

■ Appellants' suggestion that a corporation bringing an action under section 1304 "may only deny, not affirm, dissenter status," is directly contrary to the language of the statute itself: "If the corporation denies that the shares are dissenting shares, or the corporation and the shareholder fail to

---

[3]Merchants expressly pointed out in its merger notice that the explanation of the rights of dissenting shareholders as set forth in that letter and its earlier proxy statement were "qualified in their entirety by the provisions of [s]ections 1300-1304, . . ."

[4]The verity of such a proposition would obviously be doubtful in view of the notice's express warning that once a demand for the purchase of shares for cash had been made, it could not be withdrawn without the corporation's consent.

agree upon the fair market value of the shares, then the shareholder demanding purchase of such shares as dissenting shares or any interested corporation, within six months after the date on which notice . . . was mailed to the shareholder, but not thereafter, may file a complaint in the superior court of the proper county . . . ."

■ Appellants maintain that appraisal is not the exclusive remedy of a dissenting shareholder who has been defrauded. In support of this position they rely upon language from Ballantine and Sterling's California Corporation Laws expressing the view that section 1312, subdivision (a)[5] "is couched in terms of the limitation on an attack upon 'the validity' of a reorganization or short-form merger and would not seem to preclude direct actions for damages if fraud or other misconduct can be shown" and further, that an action brought to test whether the number of shares required to authorize or approve a reorganization has been legally voted in favor thereof "can undoubtedly question not only the correctness of the tally of votes for and against the reorganization but also such other matters related to the legality of the vote as: . . . alleged fraud or misrepresentation or failures of disclosure in soliciting; proxies or favorable votes; forgeries and the like." (Vol. 1A (4th ed. 1982) § 262.05[8][c], pp. 12-88 and 12-89, fn. omitted.)

While the language in section 1312, subdivision (a), taken at face value, might possibly be susceptible to such interpretation, we do not regard it as the most reasonable one. Under prior, but substantially similar versions of the statute (i.e., Corp. Code, § 4123, and Civ. Code, § 369, subd. (17)), it was the general rule that "recovery of the fair market value of shares is the only remedy of a dissenting stockholder except that he may bring an action to test whether the merger or consolidation was approved by the required number of shares." (13 Fletcher, Cyclopedia of the Law of Private Corporations (Perm. ed.) § 5906.3, p. 265. See also *Jackson v. Maguire* (1969) 269 Cal.App.2d 120, 131 [75 Cal.Rptr. 16]; *Giannini Controls Corp. v. Superior Court* (1966) 240 Cal.App.2d 142, 154 [49 Cal.Rptr. 643]; *Beechwood Securities Corp. v. Associated Oil Co.* (9th Cir. 1939) 104 F.2d 537; 2 Marsh, Cal. Corp. Law (1981) § 18.25, p. 532; Barton, *Business Combinations and the New General Corporation Law* (1976) 9 Loyola L.A. L.Rev. 738, 798; Ballantine and Sterling, *Upsetting Mergers*

---

[5]Subdivision (a) provides in relevant part: "No shareholder of a corporation who has a right under this chapter to demand payment of cash for the shares held by the shareholder shall have any right at law or in equity to attack the validity of the reorganization or short-form merger, or to have the reorganization or short-form merger set aside or rescinded, except in an action to test whether the number of shares required to authorize or approve the reorganization have been legally voted in favor thereof . . . ."

*and Consolidations: Alternative Remedies of Dissenting Shareholders in California* (1939) 27 Cal.L.Rev. 644, 665-667.)

That the Legislature intended to maintain the exclusivity of the appraisal remedy for dissenting shareholders is apparent not only from its basic reenactment of former section 4123 in subdivision (a) of section 1312, but also from its enactment of subdivisions (b) and (c)[6] which were not found in former versions of the statute and which expressly permit shareholder litigation other than an appraisal action where one of the merging corporations is controlled by the other or where the corporations are under common control. The creation of this limited exception suggests that for shareholders not falling within the categories therein specified, such as appellants, the appraisal process remains their exclusive remedy.[7]

Moreover, notwithstanding the quoted language from Ballantine and Sterling's California Corporation Laws, *supra,* its authors also point out that section 1106, which provides that a "copy of an agreement of merger certified on or after the effective date of the merger by an official having

---

[6]Subdivisions (b) and (c) specify: "(b) If one of the parties to a reorganization or short-form merger is directly or indirectly controlled by, or under common control with, another party to the reorganization or short-form merger, subdivision (a) shall not apply to any shareholder of such party who has not demanded payment of cash for such shareholder's shares pursuant to this chapter; but if the shareholder institutes any action to attack the validity of the reorganization or short-form merger or to have the reorganization or short-form merger set aside or rescinded, the shareholder shall not thereafter have any right to demand payment of cash for the shareholder's shares pursuant to this chapter. The court in any action attacking the validity of the reorganization or short-form merger or to have the reorganization or short-form merger set aside or rescinded shall not restrain or enjoin the consummation of the transaction except upon ten days prior notice to the corporation and upon a determination by the court that clearly no other remedy will adequately protect the complaining shareholder or the class of shareholders of which such shareholder is a member. "(c) If one of the parties to a reorganization or short-form merger is directly or indirectly controlled by, or under common control with, another party to the reorganization or short-form merger, in any action to attack the validity of the reorganization or short-form merger or to have the reorganization or short-form merger set aside or rescinded, (1) a party to a reorganization or short-form merger which controls another party to the reorganization or short-form merger shall have the burden of proving that the transaction is just and reasonable as to the shareholders of the controlled party, and (2) a person who controls two or more parties to a reorganization shall have the burden of proving that the transaction is just and reasonable as to the shareholders of any party so controlled."

[7]Appellants' arguments to the contrary notwithstanding, we do not read section 415 as requiring a different result. That section provides: "Nothing in this division shall be construed as a derogation of any rights or remedies which any creditor or shareholder may have against any promoter, shareholder, director, officer or the corporation because of participation in any fraud or illegality practiced upon such creditor or shareholder by any such person or by the corporation in connection with the issue or sale of shares or other securities or in derogation of any rights which the corporation may have by rescission, cancellation or otherwise because of any fraud or illegality practiced on it by any such person in connection with the issue or sale of shares or other securities."

custody thereof is conclusive evidence of the performance of all conditions precedent to the merger . . . ,'' seemingly is ''designed to preclude direct attack on a merger once the agreement of merger is filed and a copy has been so certified.'' (P. 12-89, fn. 8.) Consequently, appellants would apparently be limited to the recovery of the fair market value of their shares under the appraisal action filed by Damson in any event.

We note, however, that if appellants are able to establish in the appraisal action that respondents engaged in misconduct which negatively affected ''the fair market value'' of the Merchants' stock, the price to be paid for appellants' shares will presumably be adjusted accordingly. It has been said that ''the value of any item of property on any given date, in monetary terms, is what it can be sold for in a *free* and *fair* market.'' (*Gallois* v. *West End Chemical Co.* (1960) 185 Cal.App.2d 765, 774 [8 Cal.Rptr. 596]; italics added. See also Marsh, *supra,* § 19.9, at pp. 586-587.)

Insofar as appellants' recovery rights may be more limited under an appraisal action than would be the case in an ordinary action for damages, in that the appraisal remedy does not provide for the individual liability of directors or the recovery of punitive damages and exposes dissenting shareholders to the possibility that immediate payment of their shares' fair market value may not be permitted (section 1306), we can but observe that ''[d]issenting shareholder statutes have been upheld as constitutional. A shareholder has no 'natural right' to follow an investment into a merged corporation. Corporations are merely creations of their state of incorporation. Therefore, the legislature of a corporation's state of incorporation may, if it so chooses, terminate a shareholder's investment in the corporation on payment to him of the investment's then face value.'' (Ballantine and Sterling, California Corporation Laws, *supra,* at § 262.05 [1], p. 12-76; *Beechwood Securities Corp.* v. *Associated Oil Co., supra,* 104 F.2d 537, 540.)

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 14, 1983. Bird, C. J., was of the opinion that the petition should be granted.

APPENDIX

### § 1300. Reorganization or short-form merger; dissenting shares; corporate purchase at fair market value; definitions

(a) If the approval of the outstanding shares (Section 152) of a corporation is required for a reorganization under subdivisions (a) and (b) or subdivision (e) of Section 1201, each shareholder of such corporation entitled to vote on the transaction and each shareholder of a disappearing corporation in a short-form merger may, by complying with this chapter, require the corporation in which the shareholder holds shares to purchase for cash at their fair market value the shares owned by the shareholder which are dissenting shares as defined in subdivision (b). The fair market value shall be determined as of the day before the first announcement of the terms of the proposed reorganization or short-form merger, excluding any appreciation or depreciation in consequence of the proposed action, but adjusted for any stock split, reverse stock split or share dividend which becomes effective thereafter.

(b) As used in this chapter, "dissenting shares" means shares which come within all of the following descriptions:

(1) Which were not immediately prior to the reorganization or short-form merger either (i) listed on any national securities exchange certified by the Commissioner of Corporations under subdivision (o) of Section 25100 or (ii) listed on the list of OTC margin stocks issued by the Board of Governors of the Federal Reserve System, and the notice of meeting of shareholders to act upon the reorganization summarizes the provisions of this section and Sections 1301, 1302, 1303 and 1304; provided, however, that this provision does not apply to any shares with respect to which there exists any restriction on transfer imposed by the corporation or by any law or regulation; and provided, further, that this provision does not apply to any class of shares described in clause (i) or (ii) if demands for payment are filed with respect to 5 percent or more of the outstanding shares of that class.

(2) Which were outstanding on the date for the determination of shareholders entitled to vote on the reorganization and (i) were not voted in favor of the reorganization or, (ii) if described in clause (i) or (ii) of paragraph (1) (without regard to the provisos in that paragraph), were voted against the reorganization, or which were held of record on the effective date of a short-form merger; provided, however, that clause (i) rather than clause (ii) of this paragraph applies in any case where the approval required by Section 1201 is sought by written consent rather than at a meeting.

(3) Which the dissenting shareholder has demanded that the corporation purchase at their fair market value, in accordance with Section 1301.

(4) Which the dissenting shareholder has submitted for endorsement, in accordance with Section 1302.

(c) As used in this chapter, "dissenting shareholder" means the recordholder of dissenting shares and includes a transferee of record.

### § 1301. Notice to holders of dissenting shares in reorganizations; demand for purchase; time; contents

(a) If, in the case of a reorganization, any shareholders of a corporation have a right under Section 1300, subject to compliance with paragraphs (3) and (4) of subdivision (b) thereof, to require the corporation to purchase their shares for cash, such corporation shall mail to each such shareholder a notice of the approval of the reorganization by its outstanding shares (Section 152) within 10 days after the date of such approval, accompanied by a copy of Sections 1300, 1302, 1303, 1304 and this section, a statement of the price determined by the corporation to represent the fair market value of the dissenting shares, and a brief description of the procedure to be followed if the shareholder desires to exercise the shareholder's right under such sections. The statement of price constitutes an offer by the corporation to purchase at the price stated any dissenting shares as defined in subdivision (b) of Section 1300, unless they lose their status as dissenting shares under Section 1309.

(b) Any shareholder who has a right to require the corporation to purchase the shareholder's shares for cash under Section 1300, subject to compliance with paragraphs (3) and (4) of subdivision (b) thereof, and who desires the corporation to purchase such shares shall make written demand upon the corporation for the purchase of such shares and payment to

the shareholder in cash of their fair market value. The demand is not effective for any purpose unless it is received by the corporation or any transfer agent thereof (1) in the case of shares described in clause (i) or (ii) of paragraph (1) of subdivision (b) of Section 1300 (without regard to the provisos in that paragraph), not later than the date of the shareholders' meeting to vote upon the reorganization, or (2) in any other case within 30 days after the date on which the notice of the approval by the outstanding shares pursuant to subdivision (a) or the notice pursuant to subdivision (i) of Section 1110 was mailed to the shareholder.

(c) The demand shall state the number and class of the shares held of record by the shareholder which the shareholder demands that the corporation purchase and shall contain a statement of what such shareholder claims to be the fair market value of those shares as of the day before the announcement of the proposed reorganization or short-form merger. The statement of fair market value constitutes an offer by the shareholder to sell the shares at such price.

### § 1302. Submission of share certificates for endorsement

Within 30 days after the date on which notice of the approval by the outstanding shares or the notice pursuant to subdivision (i) of Section 1110 was mailed to the shareholder, the shareholder shall submit to the corporation at its principal office or at the office of any transfer agent thereof the shareholder's certificates representing any shares which the shareholder demands that the corporation purchase, to be stamped or endorsed with a statement that the shares are dissenting shares or to be exchanged for certificates of appropriate denomination so stamped or endorsed. Upon subsequent transfers of the dissenting shares on the books of the corporation the new certificates issued therefor shall bear a like statement, together with the name of the original dissenting holder of the shares.

### § 1303. Payment of agreed price with interest; agreement fixing fair market value; filing; time of payment

(a) If the corporation and the shareholder agree that the shares are dissenting shares and agree upon the price of the shares, the dissenting shareholder is entitled to the agreed price with interest thereon at the legal rate on judgments from the date of the agreement. Any agreements fixing the fair market value of any dissenting shares as between the corporation and the holders thereof shall be filed with the secretary of the corporation.

(b) Subject to the provisions of Section 1306, payment of the fair market value of dissenting shares shall be made within 30 days after the amount thereof has been agreed or within 30 days after any statutory or contractual conditions to the reorganization are satisfied, whichever is later, upon surrender of the certificates therefor, unless provided otherwise by agreement.

### § 1304. Action to determine whether shares are dissenting shares or fair market value; limitation; joinder; consolidation; determination of issues; appointment of appraisers

(a) If the corporation denies that the shares are dissenting shares, or the corporation and the shareholder fail to agree upon the fair market value of the shares, then the shareholder demanding purchase of such shares as dissenting shares or any interested corporation, within six months after the date on which notice of the approval by the outstanding shares (Section 152) or notice pursuant to subdivision (i) of Section 1110 was mailed to the shareholder, but not thereafter, may file a complaint in the superior court of the proper county praying the court to determine whether the shares are dissenting shares or the fair market value of the dissenting shares or both or may intervene in any action pending on such a complaint.

(b) Two or more dissenting shareholders may join as plaintiffs or be joined as defendants in any such action and two or more such actions may be consolidated.

(c) On the trial of the action, the court shall determine the issues. If the status of the shares as dissenting shares is in issue, the court shall first determine that issue. If the fair market value of the dissenting shares is in issue, the court shall determine, or shall appoint one or more impartial appraisers to determine, the fair market value of the shares.