Kenneth W. FLEMING, Appellant (Counter-plaintiff below),

v.

INTERNATIONAL PIZZA SUPPLY CORP., Peter Y. Jensen, Harry Kim, and International Pizza Supply Company, Inc., Appellees (Counter-defendants below).

No. 49S02–9703–CV–166.

Supreme Court of Indiana.

March 3, 1997.

David E. Wright, David R. Day, Ronald G. Sentman, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for Appellant.

Alan S. Brown, Robert W. Wright, Locke Reynolds Boyd & Weisell, Indianapolis, for Appellee.

SULLIVAN, Judge.

We address whether the legislature's response to our decision in *Gabhart v. Gabhart,* 267 Ind. 370, 370 N.E.2d 345 (1977), precludes a dissenting shareholder from bringing separate actions for breach of fiduciary duty and fraud when statutory appraisal remedies are available.

### Background

Kenneth W. Fleming and Peter Jensen formed International Pizza Supply Corporation under the Indiana Business Corporation Law, Ind.Code § 23-1-17-1 *et seq.* (the "BCL"), in 1988. Jensen was issued a majority of the shares. In 1991, Jensen voted his shares in favor of a transaction in which the corporation sold all or substantially all of its assets pursuant to the asset sale chapter of the BCL, Ind.Code § 23-1-41.[1] Fleming advised the corporation that he dissented from the sale and demanded payment for the fair value of his shares pursuant to the dissenters' rights chapter of the BCL, Ind.Code § 23-1-44. Litigation ensued and Fleming also sought, in addition to payment for his shares under the appraisal provisions of the statute, compensatory and punitive damages from Jensen, the corporation, and other defendants[2] for breach of fiduciary duty with regard to the asset sale (Count IV); for breach of fiduciary duties and duties to protect reasonable expectations in the operation of the business (Count V); and for fraud in the operation of the business (Count VI).[3] Defendants sought summary judgment on these three counts, arguing that under the dissenters' rights chapter of the BCL, specifically Ind.Code § 23-1-8(c), appraisal was Fleming's exclusive remedy. The trial court agreed and this interlocutory appeal followed.

The Court of Appeals reversed the trial court. In its thoughtful opinion, the appellate court examined the legislature's reaction to *Gabhart v. Gabhart,* an important decision of this court construing the remedies of a shareholder dissenting from a merger under the terms of the Indiana General Corporation Act, Ind.Code § 23-1-1-1 *et seq.* (repealed) (the "GCA"). The legislature replaced the GCA with the BCL in 1986 and part of what is at issue in the case before us is the effect the adoption of the BCL had on the remedies of a dissenting shareholder enunciated in *Gabhart.*

### Discussion

#### I

This court's decision in *Gabhart* and the legislature's response to it represent two important chapters in the history of Indiana corporate law, chapters worth reviewing with some care prior to deciding the question presented by this case.

The *Gabhart* litigation was the result of a dispute arising from the apparent effort of four shareholders who collectively owned a majority of a corporation to acquire all of the shares of the fifth shareholder. When extended efforts to purchase the fifth shareholder's interest proved unsuccessful, the majority shareholders invoked the merger provisions of the GCA. A new corporation owned by the majority shareholders was formed and the previously existing corporation was merged into it. Under the terms of the merger, the new corporation was to assume all of the property, rights, and liabili-

---

1. As used in this opinion, the expression "asset sale" refers to a transaction which falls within Ind.Code § 23-1-41.

2. As this litigation developed, Jensen, the corporation, and the others referred to were actually counterclaim defendants. For simplicity, they will be referred to in this opinion as "defendants."

3. Fleming's complaint alleges in other counts that he and the corporation were parties to an employment agreement and asserts against defendants claims of breach of the employment contract, conspiracy for intention interference with employment contract, and breach of fiduciary duties regarding employment contract. These claims are separate and independent of the claims addressed in this interlocutory appeal and are not affected by this opinion.

ties of the previously existing corporation, and the five shareholders of the previously existing corporation were to surrender their shares in return for payment. Under the GCA, a shareholder in a merging corporation was provided the right for thirty days after the approval of the merger to object to the merger and demand payment of the value of the shares. But a shareholder who did not invoke this appraisal remedy was "conclusively presumed to have assented to" the merger. The fifth shareholder in *Gabhart* did not exercise these appraisal rights. Instead, the shareholder filed suit in federal court alleging that the merger agreement was intentionally misleading, that the four majority shareholders knew the notices of the merger sent to the plaintiff were not likely to reach the plaintiff in time, and that the sole purpose of the merger was to eliminate the plaintiff as a shareholder. *Gabhart*, 267 Ind. at 374–376, 370 N.E.2d at 348–350.

When the *Gabhart* case reached the United States Court of Appeal for the Seventh Circuit, the court rejected the plaintiff's claim of fraudulent misrepresentation and failure to comply with the formal requirements of the GCA. *Gabhart*, 267 Ind. at 377, 370 N.E.2d at 350. But the court found several issues on which it felt it needed the guidance of this court. It certified three questions to us which probed the extent to which the plaintiff's sole remedy was to object to the merger and demand payment for the value of the shares within the prescribed time limits. Specifically, the Seventh Circuit asked us whether, notwithstanding the appraisal remedy, the plaintiff could:

1. [A]ttack the merger under Indiana law on the ground that it was not motivated by a valid business purpose?

2. [P]rosecute a derivative action, filed after the approval but before the effective date of the merger, against the Merging Company or its successor?

3. If the minority shareholder's derivative action can be maintained as such and damages are recovered for the corporation

in that action, . . . recover in that proceeding his pro rata share of the damages?

*Gabhart*, 267 Ind. at 379–380, 370 N.E.2d at 351–352.

In answering question no. 1, we found that the "object and demand" appraisal procedure in the GCA had been designed by the legislature to supersede the old common law appraisal procedure of enjoining the merger. 267 Ind. at 383, 370 N.E.2d at 353. The legislature had not, we decided, either authorized or prohibited the elimination of minority interests in a merger not having a legitimate corporate purpose. 267 Ind. at 387, 370 N.E.2d at 355. We reached the conclusion that a corporate transaction, though structured as a merger, which had no valid purpose (which we defined "to mean a purpose intended to advance a corporate interest") should be treated as a corporate dissolution, not a merger. And we pointed out that minority shareholders whose equity would be eliminated or reduced "may enjoin a dissolution to be effected by procedures other than those provided by statute for that purpose." 267 Ind. at 388, 370 N.E.2d at 356.

As to questions 2 and 3, we concluded that although a shareholder of a merged corporation is generally precluded from litigating a cause of action which has passed to the surviving corporation, there were certain situations where such a claim might be recognized:

[A] Court of Equity may grant relief, pro rata, to a former shareholder, of a merged corporation, whose equity was adversely affected by the fraudulent act of an officer or director and whose means of redress otherwise would be cut off by the merger, if there is no shareholder of the surviving corporation eligible to maintain a derivative action for such wrong and said shareholder had no prior opportunity for redress by derivative action against either the merged or the surviving corporation.

267 Ind. at 392, 370 N.E.2d at 358. *Gabhart* received close attention in other jurisdictions [4] and secondary sources.

---

4. *See, e.g., Walter J. Schloss v. Chesapeake & Ohio Ry. Co.*, 73 Md.App. 727, 536 A.2d 147, 155 (Md.1988); *Sifferle v. Micom Corp.*, 384 N.W.2d 503, 508 (Minn.Ct.App.1986); *Yeager v. Paul Semonin Co.*, 691 S.W.2d 227, 228 (Ky.Ct.App. 1985); *Twenty Seven Trust v. Realty Growth In-*

In 1985, the legislature created the Indiana General Corporation Law Study Commission to study the then-existing GCA and recommend changes thereto. The Commission largely concluded that the GCA should be replaced by the 1984 version of the Revised Model Business Corporation Act (the "RMA"), published by the Corporation, Banking and Business Law Section of the American Bar Association. The Commission's recommendations were accepted by the legislature which adopted the BCL in 1986. In addition to adopting the BCL itself, the legislature authorized the Commission to publish its "Official Comments to the BCL," which the legislature specified could "be consulted by the courts to determine the underlying reasons, purposes, and polices of the BCL" and "be used as a guide in its construction and application." Ind.Code § 23–1–17–5.[5]

In adopting the BCL, the Indiana legislature consciously modified the language of the RMA with *Gabhart* in mind. Both the RMA and the BCL set forth the procedures for shareholders to dissent from and obtain payment for the fair value of the shareholders' shares, in the event of certain corporate transactions including mergers (the transaction at issue in *Gabhart*) and asset sales (the transaction at issue in the case before us). Revised Model Act § 13.02(b) provides:

> A shareholder entitled to dissent and obtain payment for his shares under this chapter may not challenge the corporate action creating his entitlement unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.

RMA § 13.02(b) (1984). The Official Comment to this subsection of the RMA gives the following explanation:

> The remedy is the exclusive remedy unless the transaction is "unlawful" or "fraudulent." The theory underlying this section

is as follows: when a majority of shareholders has approved a corporate change, the corporation should be permitted to proceed even if a minority considers the change unwise or disadvantageous, and persuades a court that this is correct. Since dissenting shareholders can obtain the fair value of their shares, they are protected from pecuniary loss. Thus in general terms an exclusivity principle is justified. But the prospect that shareholders may be "paid off" does not justify the corporation in proceeding unlawfully or fraudulently. If the corporation attempts an action ... by deception of shareholders, or in violation of a fiduciary duty—to take some examples—the court's freedom to intervene should be unaffected by the presence or absence of dissenters' rights under this chapter. Because of the variety of situations in which unlawfulness and fraud may appear, this section makes no attempt to specify particular illustrations. Rather, it is designed to recognize and preserve the principles that have developed in the case law of Delaware, New York and other states with regard to the effect of dissenters' rights on other remedies of dissent shareholders. See *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del.1983) (appraisal remedy may not be adequate "where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross or palpable overreaching are involved"). See also Vorenberg, "Exclusiveness of the Dissenting Stockholders' Appraisal Right," 77 Harv. L.Rev. 1189 (1964).

Official Comment 2 to R.M.A. § 13.02.

In contrast, when our legislature adopted this subsection as part of the BCL, it provided:

> A shareholder ... who is entitled to dissent and obtain payment for the shareholder's shares under this chapter ... may not challenge the corporate action creating ... the shareholder's entitlement.

*vestors*, 533 F.Supp. 1028, 1039 (D.Md.1982); *Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433, 441 (1980); *Yanow v. Teal Indus-*

*tries, Inc.*, 178 Conn. 262, 422 A.2d 311, 320 (1979).

5. These Official Comments are published in

Ind.Code § 23–1–44–8(c).[6] The Indiana Official Comments to this subsection contrast its language with that of the RMA and squarely address its applicability to the *Gabhart* issue:

> Subsection (c), which establishes the exclusivity of Chapter 44's dissenters' rights remedies, deletes RMA language stating that such rights are exclusive "unless the action is unlawful or fraudulent with respect to the shareholder or the corporation." Deletion of this language reflects a conscious response to the Indiana Supreme Court's decision in *Gabhart v. Gabhart,* 267 Ind. 370, 370 N.E.2d 345 (1977).

*Gabhart* involved the interpretation of the GCA's exclusivity provision, IC 23–1–5–7(c), which provided:

> Every shareholder who did not vote in favor of such merger, consolidation, or exchange and who does not object in writing and demand payment of the value of his shares at the time and in the manner stated in this section shall be conclusively presumed to have assented to such merger, consolidation, or exchange.

Notwithstanding this language, the *Gabhart* Court held that a minority shareholder was entitled to challenge a "freeze-out" merger as a de facto dissolution if the merger did not have a "valid purpose"— defined by the Court as a purpose intended to advance a corporate interest. *Gabhart* refused to adopt the approach of the then-leading Delaware case, *Singer v. Magnavox Co.,* 380 A.2d 969 (Del.1977) (later overruled in *Weinberger v. UOP, Inc.,* 457 A.2d 701, 703 (Del.1983)), which permitted judicial inquiry into the entire fairness of the transaction on the basis of fiduciary duty owed to minority shareholders. The *Gabhart* Court also found that IC 23–1–5–7(c) did establish the exclusive remedy for mergers with a "valid purpose." Absent such a "valid purpose,"

however, *Gabhart* held that minority shareholders were not limited to statutory appraisal rights but could also seek to enjoin the corporate transaction creating those rights.

Whether or not *Gabhart* correctly interpreted the GCA's exclusivity provision, the Commission believed the decision created substantial uncertainty about whether and to what extent minority shareholders could seek to enjoin or undo corporate transactions authorized by statute and approved by the majority. Given the potential for disruption of corporate transactions where a *Gabhart* rule applied to the BCL, the General Assembly adopted subsection (c) as a categorical statutory rule that shareholders entitled to dissenters' rights may not challenge the corporate action creating that entitlement. Hence, the kind of minority shareholder challenge to corporate action permitted by *Gabhart* under IC 23–1–5–7(c) is not permitted under subsection (c).

Official Comments to Ind.Code § 23–1–44–8 (West 1989).

## II

In the case before us, Fleming seeks to be paid for the appraised value of his shares under Ind.Code § 23–1–44. Fleming also seeks to recover damages from the defendants for breach of fiduciary duty with regard to the asset sale, for breach of fiduciary duties and duties to protect reasonable expectations in the operation of the business, and fraud in the operation of the business.[7] Defendants sought summary judgment on these three counts, arguing that Ind.Code § 23–1–44–8(c) renders appraisal Fleming's exclusive remedy. Defendants' argument has the following contours. First, they argue that, while under *Gabhart* it was possible in some circumstances to challenge a merger or asset sale transaction outside appraisal, the

---

West's Annotated Indiana Code. We recognize these comments as authoritative.

**6.** The language omitted and replaced by ellipses relates to the appraisal remedy in the context of corporations with publicly-traded shares.

**7.** As noted in footnote 3, *supra,* Fleming also asserts against defendants claims of breach of employment contract, conspiracy for intention interference with employment contract, and breach of fiduciary duties regarding employment contract. These claims are separate and independent of the claims addressed in this interlocutory appeal and are not affected by this opinion.

Official Comments make clear that under the BCL, appraisal was to be the exclusive remedy. Second, they argue that under the definition of "fair value" contained in the BCL, a dissenting shareholder is entitled to recover based on the full value of the shares before any allegedly wrongful conduct occurred.[8] To permit the additional recovery sought here, they argue, would result in a "double recovery." Third, defendants argue that the statute reflects a conscious policy choice of the legislature between the rights of majority and minority shareholders which a court is not free to disregard.

Fleming of course argues that Ind.Code § 23–1–44–8(c) does not preclude actions for breach of fiduciary duty and fraud. His arguments are also strong. First, he contends that the problem in this case is not the same as in *Gabhart* and that defendants stretch the meaning of the Official Comments too far in contending that it is. Fleming argues that the problem in *Gabhart* was only whether the merger had a valid corporate purpose, and *Gabhart* only held that where a merger did not have a valid corporate purpose, dissolution was a remedy available to shareholders. In contrast, here the problem is whether the value of the corporation was depleted prior to the asset sale by breach of fiduciary duty and fraud; Fleming does not seek dissolution—or even to enjoin the asset sale—but only to pursue common law actions for breach of fiduciary duty and fraud. Second, Fleming views the "fair value" definition in Ind.Code § 23–1–44–3 as entitling him to the value of his shares immediately prior to the asset sale, after the alleged wrongful depletion of the value of the business occurred.

As mentioned above, the Court of Appeals agreed with Fleming. Citing to *W & W Equipment Co., Inc. v. Mink,* 568 N.E.2d 564, 576 (Ind.Ct.App.1991), the court concluded that the legislature did not mean to preclude recovery of compensatory damages when there has been a breach of fiduciary duty or fraud. Rather, as Fleming contend-

ed, it meant only to remove the dissolution remedy provided by *Gabhart. Fleming,* 640 N.E.2d at 1080.

### III

We are thus presented with the question of just what the legislature meant to provide to dissenting shareholders under the BCL in the way of remedy or remedy in the face of merger or asset sale.

First, although not of particular relevance to the case before us today, we think it unmistakably clear that the legislature meant to reject the *Gabhart* analysis that a merger which has no valid corporate purpose is a *de facto* dissolution. In our view, the legislature clearly disapproved not only the alternative dissolution remedy but also the notion the judicial inquiry into the purpose of the merger was permitted. And we would also observe that the legislature's approach incorporated *Gabhart's* teachings that a shareholder's appraisal right could not be enforced by enjoining the merger, 267 Ind. at 383, 370 N.E.2d at 353; and that the judiciary should not intrude into corporate management to the extent of passing upon the "entire fairness" of a merger. 267 Ind. at 388, 370 N.E.2d at 356.

Second, we agree with Fleming and the Court of Appeals that shareholders in a closely-held corporation stand in a fiduciary relationship with one another and must deal fairly, honestly, and openly with the corporation and their fellow shareholders. *Barth v. Barth,* 659 N.E.2d 559, 561 (Ind.1995). It follows, therefore, that a shareholder suffering compensatory damages proximately caused by the breach of such fiduciary duty or fraud must have a remedy therefor. *See* Ind. Const. art I, § 12.

On the other hand, we think the defendants are correct in their argument that, in a merger or asset sale, the exclusive remedy available to a shareholder seeking payment for the value of the shareholder's shares is the statutory appraisal procedure. We believe the legislature clearly and unambigu-

---

**8.** Ind.Code § 23–1–44–3 provides:

As used in this chapter, "fair value," with respect to a dissenter's shares, means the value of the shares immediately before the effectua-

tion of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable.

ously made the determination that separate actions would not lie for breach of fiduciary duty and fraud when it rejected the language of RMA § 13.02(b) and used instead the language of Ind.Code § 23–1–44–8(c).[9] We reach this conclusion with such firmness because (i) the legislature clearly used the RMA as its template for most of the BCL and so the difference between RMA § 13.02(b) and Ind.Code § 23–1–44–8(c) is clearly a conscious one; (ii) Official Comment 2 to RMA § 13.02, *supra,* makes clear the availability of a separate remedy thereunder for breach of fiduciary duty and fraud, and (iii) the Official Comment to Ind.Code § 23–1–4–8(c) expressly references the fact that our legislature deleted the "RMA language stating that [dissenters'] rights are exclusive 'unless the action is unlawful or fraudulent.'"

We think the statutory scheme accommodates both of these positions. We conclude that the legislature meant to limit a dissenting shareholder seeking payment for the value of the shareholder's shares to the statutory appraisal procedure. This accords with the policies of corporate majority rule and of ascertaining dissenters' claims on a timely basis. But we also conclude that the legislature did not foreclose the ability of dissenting shareholders to litigate their breach of fiduciary duty or fraud claims within the ap-

praisal proceeding. That is, it is perfectly consistent with the shareholder's claim for payment in the appraisal process for the shareholder to allege that the value assigned to the shares in the merger or asset sale was too low because of the breach of fiduciary duty or fraud on the part of majority shareholders.

This is essentially the approach taken by the California Supreme Court to this problem in *Steinberg v. Amplica, Inc.,* 42 Cal.3d 1198, 233 Cal.Rptr. 249, 729 P.2d 683 (1986).[10] In that case dissenting shareholders, rather than asserting their statutory appraisal rights, instead filed a class action suit claiming the surviving corporation, the merging corporation, and certain officers and directors of the merging corporation had committed gross abuses of trust and breached their fiduciary duties. While Chief Justice Bird in dissent argued strenuously in accord with Fleming's position here that the dissenters should be permitted to pursue their common law claims, Justice Mosk wrote for the majority, "We see nothing in the appraisal statutes to prevent vindication of a shareholder's claim of misconduct in an appraisal proceeding." *Steinberg,* 233 Cal.Rptr. at 255, 729 P.2d at 690.[11] As such, the California court concluded that appraisal was an

9. We believe that it is equally clear that the BCL did not intend to restrict any claims of wrongdoing that a corporation or shareholder brings before the corporate action creating dissenters' rights occurs. For example, if an officer had stolen money from the corporation prior to a merger, the corporation (or a shareholder on the corporation's behalf) would have a claim (or a derivative suit on behalf of the corporation) to recover the money from the officer. If such a claim is not yet resolved at the time the fair value of the dissenters' shares is established, the corporation's claim should be valued like any other asset of the corporation. To the extent judicial intervention is required to accomplish that valuation, the claim could be tried within the judicial appraisal proceeding, if any, or using some other procedure established by the trial court and appropriate in the circumstances.

As to the general rule that shareholders may not maintain an action in their own names to redress an injury to the corporation, we recently held that in certain limited circumstances a shareholder in a closely-held corporation may proceed against the corporation in a direct action, rather than a derivative action. *Barth v. Barth,* 659 N.E.2d 559. However, where the

principles supporting the general rule—risk of multitudinous litigation, protection of creditors, etc.—are implicated to the extent described in *Barth,* the shareholder may only proceed in a derivative action. 659 N.E.2d at 562. In any event, the shareholder asserting such a claim in a direct action can claim no broader or greater rights than the corporation could assert, had it chosen to bring the claim, or than the shareholder could assert in a derivative action.

10. The *Steinberg* court specifically refrained from addressing the question of the availability of common law breach of fiduciary duty and fraud claims in the context of a corporation merging into a corporation that controls it because the appraisal statute at issue in that case contained a specific exception for such situations. *Steinberg,* 233 Cal.Rptr. at 250 n. 3, 729 P.2d at 685 n. 3. The Indiana BCL draws no such distinction.

11. This contrasts with the apparently narrow scope of the Ohio and Delaware appraisal remedies. *See* Michelle M. Pepin, Note, *Exclusivity of Appraisal—The Possibility of Extinguishing Shareholder Claims,* 42 Case W. Res. L.Rev. 955, 961–963 (1992).

adequate remedy as the issue of misconduct could be litigated in the appraisal proceeding and, if proven, would be used to calculate the appraisal value of the stock.[12] *See also Barth v. NovaSensor,* 1991 WL 330922 at \*7 (N.D.Cal.1991); *Sturgeon Petroleums Ltd. v. Merchants Petroleum Co.,* 147 Cal.App.3d 134, 195 Cal.Rptr. 29, 33 (1983). *Cf. Walter J. Schloss Assocs. v. Arkwin Indus., Inc.,* 90 A.D.2d 149, 455 N.Y.S.2d 844, 851–852 (N.Y.App.Div.1982) (Mangano, J., dissenting), *dissent adopted,* 61 N.Y.2d 700, 472 N.Y.S.2d 605, 606, 460 N.E.2d 1090, 1091 (1984) (holding that although New York corporate statute provided an exception from the appraisal remedy for unlawful or fraudulent corporate action, "[a]n action for damages alone will not lie, since this would allow a dissenting shareholder, by merely alleging fraudulent or unlawful corporate conduct, to seek therein the identical relief available to him in appraisal proceedings").

As in *Steinberg,* we see no reason why Fleming's breach of fiduciary duty and fraud claims cannot be considered as part of the appraisal process. Defendants themselves argue that Ind.Code § 23-1-44-3 "has a built-in mechanism which prevents the majority from enjoying the fruits of wrongful conduct, for the dissenter receives his equity based on the full value of his stock *before* any allegedly wrongful conduct occurred." Defendants' Br. in Support of Pet. to Transfer at 12. While we believe there probably are limits on this principle, we generally agree that the expression "corporate action to which the dissenter objects" as used in Ind. Code § 23-1-44-3 includes not only the merger or asset sale itself but genuine issues of breach of fiduciary duty and fraud affecting the value of the shares at the time of the transaction. While we acknowledge that the appraisal remedy does not provide for the individual liability of majority shareholders or the recovery of punitive damages, we be-

lieve that those are the policy choices made by the legislature in adopting Ind.Code § 23-1-44-8(c) and are clearly within the legislature's prerogative. *Cf. Sturgeon Petroleums Ltd.,* 195 Cal.Rptr. at 33–34.

### Conclusion

We grant transfer and vacate the opinion of the Court of Appeals. Ind. Appellate Rule 11(b)(3). We affirm the trial court's grant of summary judgment on Counts IV, V, and VI and remand to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

---

**12.** In the extensive literature discussing *Steinberg,* it is sometimes noted that the plaintiffs knew of the alleged breach of fiduciary duty and fraud prior to the merger and that had they been unaware of the alleged fraudulent acts until after the time for asserting their appraisal rights had passed, appraisal might not have been their exclusive remedy. *See Steinberg,* 233 Cal.Rptr. 249, 729 P.2d at 689; Marc I. Steinberg & William A. Reece, *The Supreme Court, Implied Rights of Action & Proxy Regulation,* 54 Ohio St. L.J. 67, 110 (1993); Robert L. Dunn, *Steinberg v. Amplica: The California Supreme Court Holds Appraisal to be the Dissenting Shareholder's Exclusive Remedy,* 22 U.S.F. L.Rev. 293, 301 (1988). This concern is not implicated by the case before us; Fleming timely asserted his appraisal rights.