In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 17-1582

IN RE: LESTER L. LEE,

*Debtor.*

THE WILLIAM R. LEE IRREVOCABLE
TRUST and DONALD EUGENE LEE and
ROBERT EARL LEE, as co-trustees,

*Plaintiffs-Appellees,*

*v.*

LESTER L. LEE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:15-cv-00182-RLY-DML — **Richard L. Young**, *Judge.*

_____

ARGUED MARCH 29, 2018 — DECIDED AUGUST 3, 2018

_____

Before BAUER, FLAUM, and MANION, *Circuit Judges.*

MANION, *Circuit Judge*. Lester Lee merged two companies he controlled. A trust administered by his nephews, with a pre-merger minority interest in one of the companies, dissented from the merger pursuant to Indiana's Dissenters' Rights Statute and obtained a judgment against that company. Lester filed a personal bankruptcy petition. The Trust commenced an adversary proceeding in that bankruptcy action, seeking to pierce the corporate veil and hold Lester personally liable for the judgment against the company. The bankruptcy court granted summary judgment for the Trust and pierced the corporate veil based on Lester's post-merger conduct stripping the company's assets. The district court affirmed. Lester appeals to us and argues piercing was inappropriate for various reasons. We affirm.

### I. Facts[1]

Brothers Lester and William Lee created Lees Inns of America, Inc. ("LIA") in 1974 as a public company in the hotel business. About a decade later, William's sons—Robert and Donald Lee—joined the business. LIA prospered. About

---

[1] When the Trust moved for summary judgment before the bankruptcy court, Lester failed to provide a Statement of Material Facts in Dispute and failed to designate evidence creating a genuine issue of material fact regarding veil piercing. On appeal, Lester informs us "the facts are undisputed." (Appellant's Reply Br. at 3, 7.) The bankruptcy court entered fact findings in its order granting summary judgment to the Trust. *William R. Lee Irrevocable Tr. v. Lee* (*In re Lee*), Ch. 7 Case No. 12-90007, Adv. No. 13-59056, DE 62 at 2–14 (Bankr. S.D. Ind. Dec. 2, 2015). The district court summarized the facts in its order affirming the bankruptcy court's judgment. *Lee v. William R. Lee Irrevocable Tr.*, No. 4:15-CV-182, 2017 WL 685379, at *1–2 (S.D. Ind. Feb. 17, 2017). Also, the Court of Appeals of Indiana provided background in *Lees Inns of Am., Inc. v. William R. Lee Irrevocable Tr.*, 924 N.E.2d 143, 148–54 (Ind. Ct. App. 2010).

another decade later, LIA went private through a buy-out of the public shareholders, leaving only Lester and William as owners of LIA. At this point, Lester owned 516 shares to William's 484 shares. William created the William R. Lee Irrevocable Trust ("Trust") and transferred his LIA shares to it. Robert and Donald served as trustees.

Conflict brewed. Around 1995, Lester encountered substantial financial difficulties associated with another company he owned, Maxim. He proposed to William that Maxim merge with LIA, but William rejected this idea. Lester then took steps to take control over LIA. The bankruptcy court covered the mounting turmoil. There is no need to delve into it here.

At or around a shareholders meeting in 1998, Lester told Robert and Donald, "I will screw you at every opportunity," and "I will do everything I can to make sure you never receive one dime from this company," and "I'll guarantee you one thing, I'll nail your ass to the wall." *Lees Inns of Am., Inc. v. William R. Lee Irrevocable Tr.*, 924 N.E.2d 143, 149, 158 (Ind. Ct. App. 2010); *William R. Lee Irrevocable Tr. v. Lee* (*In re Lee*), Ch. 7 Case No. 12-90007, Adv. No. 13-59056, DE 62 at 4 (Bankr. S.D. Ind. Dec. 2, 2015) (order granting Trust's motion for summary judgment and holding Lester personally liable); Appellant's Br. at 16.

In April 2000, Lester, as majority shareholder of LIA and sole shareholder of LLL Acquisition Corporation ("LLL"), approved a merger of these two companies. The Trust dissented from the merger. The Trust asserted its rights under Indiana's Dissenters' Rights Statute, demanded payment, and deposited its certificate of LIA stock in May 2000. LIA was merged into LLL on June 26, 2000, terminating the Trust's

shareholder status and leaving Lester as LIA's sole shareholder.

After the merger, Lester allegedly gutted LIA to prevent the Trust from collecting the value of its LIA shares. In November 2000, he bought property from LIA on terms favorable to him and eventually realized substantial profits. Subsidiaries of LIA were transferred for little or no consideration from LIA to The Lee Group Holding Company, LLC, owned by Lester's immediate family. Lester also perpetrated a collusive lawsuit (filed July 28, 2008, shortly before trial in the appraisal proceeding) in which he controlled all the named parties and caused the Jefferson Circuit Court to enter an agreed judgment that all LIA assets should be transferred to him and various companies he controlled. Lester did not disclose the transfers of the property and subsidiaries, or the collusive lawsuit, to Robert or Donald until much later.

In September and October 2008, the Jennings Circuit Court held a bench trial in the appraisal proceeding (a/k/a dissenters' rights action). Between the trial and the judgment, Lester dissolved LIA in November 2008. In December 2008, the court entered a $7,522,879.73 judgment for the Trust against LIA. This amount represented the sum of the fair value of the Trust's 484 shares of LIA stock (as of June 30, 2000) minus the amount already paid by LIA to the Trust. The judgment also included interest, expert fees and expenses, and attorney's fees and expenses.[2] LIA appealed to the Court of Appeals of Indiana, which affirmed the judgment in March

---

[2] The math appears to be off by a negligible amount, but that is not at issue in this appeal.

2010. The Supreme Court of Indiana denied LIA's transfer petition.

## II. Procedural Posture

In January 2012, Lester petitioned for Chapter 7 bankruptcy. In August 2013, the Trust initiated an adversary proceeding to pierce LIA's corporate veil and hold Lester personally liable for the $7,522,879.73 judgment. In December 2014, Lester waived discharge. During the bankruptcy proceedings, Lester testified he "[a]bsolutely" filed the collusive lawsuit to make sure the Trust would not recover if it obtained a judgment in the appraisal proceeding. He did not dispute that he told Robert and Donald: "I will screw you at every opportunity," and "I will do everything I can to make sure you never receive one dime from this company," and "I'll guarantee you one thing, I'll nail your ass to the wall." Indeed, Lester lists two of these quotes in his appellate brief's recital of the "largely stipulated" facts. (Appellant's Br. at 14, quoting *Lees Inns*, 924 N.E.2d at 149.)

In April 2015, the Trust moved for summary judgment. In response, Lester failed to include a Statement of Material Facts in Dispute and failed to designate any evidence creating a genuine issue of material fact regarding veil piercing. In December 2015, the bankruptcy court concluded there was no genuine issue of material fact and granted summary judgment to the Trust. The bankruptcy court noted it had already heard testimony from Lester that he transferred all of LIA's assets while the dissenters' rights action was pending. He claimed he did this to keep the Trust from getting the assets, and he "clearly appreciated that in so doing, he would render futile the Dissenters' Rights Action; that was his stated intent." *In re Lee*, Adv. No. 13-59056, DE 62 at 24. The

bankruptcy court held that remedies for Lester's pre-merger conduct were limited to the appraisal proceeding established by Indiana's Dissenters' Rights Statute. Therefore, the bankruptcy court held his pre-merger conduct could not support piercing the corporate veil. But the bankruptcy court held that his post-merger conduct could, and did, satisfy the veil-piercing requirements under Indiana law: Lester "has exhibited a clear pattern of conduct and fraudulent intent that allows the Court to conclude as a matter of law that [he] manipulated LIA post-merger to promote an injustice against the Trust such that piercing the corporate veil is warranted." *Id.* Thus the bankruptcy court put Lester personally on the hook for the entire balance due on the judgment against LIA. The district court affirmed.

Lester raises three issues on appeal. First, he argues the district court erred by allowing the Trust to pierce the corporate veil to hold him personally liable for the appraisal amount because Indiana's Dissenters' Rights Statute provides the exclusive remedy. Second, he argues piercing is an equitable remedy available only to third parties, and the district court erred by allowing piercing in favor of the Trust, which is a minority shareholder and not a third party. Third, he argues the district court erred by affirming summary judgment for the Trust on the piercing claim despite complex economic questions involving allegations of fraud which should render summary judgment inappropriate. We address each issue in turn. We review a grant of summary judgment *de novo*. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

## III. Discussion

*A. Exclusive remedy?*

Lester contends that piercing LIA's corporate veil circumvents the exclusivity provision of Indiana's Dissenters' Rights Statute (Ind. Code § 23-1-44-8(c) (1987)) and contravenes the legislative policy precluding individual liability of majority shareholders.

The Dissenters' Rights Statute in effect at the time of the merger between LIA and LLL stated: "A shareholder … who is entitled to dissent and obtain payment for the shareholder's shares under this chapter … may not challenge the corporate action creating … the shareholder's entitlement." Ind. Code § 23-1-44-8(c) (1987).

The problem with Lester's argument is simple. The statute stops a dissenting shareholder from challenging the corporate action creating its entitlement. But in seeking to pierce LIA's corporate veil, the Trust does not challenge the corporate action creating its entitlement. In seeking to pierce the corporate veil, the Trust does not challenge the merger. As the district court aptly put it: "The Trust is not challenging the merger itself in any way—i.e., it does not seek an injunction to prevent the merger or to undo it." *Lee v. William R. Lee Irrevocable Tr.*, No. 4:15-CV-182, 2017 WL 685379, at *5 (S.D. Ind. Feb. 17, 2017).

Indiana's Dissenters' Rights Statute allows a shareholder to dissent from a merger and obtain payment of the fair value of its shares. Far from violating any exclusivity provision, the Trust merely seeks to effectuate its statutory rights by seeking to pierce the veil of a liable corporation Lester stripped of assets after the merger. The statute supplies no shield to

prevent piercing LIA's corporate veil based on post-merger conduct.

Section 23-1-44-8 does not (and did not on the date of the merger) use any version of the word "exclusive." Other Indiana statutes establishing exclusive remedies specify the exclusivity in the text. *See, e.g.,* Ind. Code § 22-3-2-6 (Worker's Compensation: "The rights and remedies granted to an employee … shall exclude all other rights and remedies of such employee … ."); Ind. Code § 22-3-7-6 (Worker's Occupational Diseases Compensation: "The rights and remedies granted under this chapter to an employee … shall exclude all other rights and remedies of such employee … ."); Ind. Code § 32-30-16-1(e) (Utility Easements: "[T]his chapter provides the exclusive remedy to a property owner … ."); Ind. Code § 14-22-26-5(b) (Wild Animal Permit: "IC 4-21.5 provides the exclusive remedy available to a person aggrieved by a determination … ."); *see also Call v. Scott Brass, Inc.*, 553 N.E.2d 1225, 1229 (Ind. Ct. App. 1990) (Concluding Indiana Code § 34-4-29-1 was not the exclusive remedy for an at-will employee discharged for appearing for jury duty, in part based on the absence of textual support for exclusivity: "Other statutes which have exclusive remedies specify their exclusivity in the statute. … There is no mention of exclusivity in I.C. 34-4-29-1.").

True, other sections of the Dissenters' Rights Statute use versions of the word "exclusive." *See* Ind. Code § 23-1-44-3 (1986) (defining "fair value" to exclude appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable); Ind. Code § 23-1-44-19(d) (1986) (providing that the jurisdiction of the court conducting a proceeding to determine fair value is plenary and exclusive).

And true, the official comments to the version of § 23-1-44-8 effective on the merger date (June 26, 2000) mention that subsection (c) "establishes the exclusivity of Chapter 44's dissenters' rights remedies." Official Comments to Ind. Code § 23-1-44-8 (1987). And true, several decisions regarding subsection (c) refer to it as the "exclusive remedy" for minority shareholders in the event of a merger. *See Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051, 1054–57 (Ind. 1997); *Young v. Gen. Acceptance Corp.*, 738 N.E.2d 1079, 1090–93 (Ind. Ct. App. 2001), *affirmed in part and vacated in part*, 770 N.E.2d 298 (2002); *Settles v. Leslie*, 701 N.E.2d 849, 853 (Ind. Ct. App. 1998). But the content and context of the statute, the official comments, and the decisions make clear that this "exclusivity" does not inoculate a majority shareholder from piercing based on his post-merger conduct. After the merger, Lester devalued LIA in an effort to render the Trust's judgment worthless. Lester bought property from LIA on terms favorable to him. Subsidiaries of LIA were transferred for little or no consideration to The Lee Group Holding Company, LLC. And Lester perpetrated the collusive lawsuit leading to an agreed judgment. The statute does not protect these post-merger chicaneries.

Consider as an analogy Indiana's worker's compensation system. Indiana Code § 22-3-2-6—titled "Exclusive remedies"—provides that worker's compensation is generally the exclusive remedy against an employer for certain work-related injuries. But it would seem to make no sense for that section to stop a victim from piercing the corporate veil of the entity on the hook to pay worker's compensation if someone hiding behind the veil manipulated structures, ignored formalities, stripped assets, or otherwise

satisfied the piercing requirements after entry of a worker's compensation award.

Lester relies heavily on the Supreme Court of Indiana's decision in *Fleming*. There, the court held "the exclusive remedy available to a shareholder seeking payment for the value of the shareholder's shares is the statutory appraisal procedure." *Fleming*, 676 N.E.2d at 1056. And the court acknowledged "the appraisal remedy does not provide for the individual liability of majority shareholders … ." *Id.* at 1058.

But *Fleming* involved allegations of breach of fiduciary duty and fraud *before* the asset sale[3] from which the minority shareholder dissented: "the problem is whether the value of the corporation was depleted prior to the asset sale by breach of fiduciary duty and fraud … ." *Id.* at 1056. *Fleming* did not involve, as here, an effort to pierce a corporate veil to hold an individual personally liable for the judgment against the corporation based on wrongdoing *after* the corporate action from which the minority shareholder dissented.[4] Moreover,

---

[3] An asset sale is analogous to a merger for present purposes. Both an asset sale (as in *Fleming*) and a merger (as in the case before us) can be "corporate actions" triggering a shareholder's right to dissent and obtain payment under § 23-1-44-8(a).

[4] Indeed, *Fleming* discussed a Supreme Court of California case, *Steinberg v. Amplica, Inc.*, 729 P.2d 683 (Cal. 1986), holding that appraisal was an adequate remedy for particular misconduct, which would be factored into the calculation of the value of the stock. *Fleming*, 676 N.E.2d at 1057–58. Timing matters. The *Steinberg* court concluded that "where the plaintiff was aware of all the facts leading to his cause of action for alleged misconduct in connection with the term of the merger prior to the time the merger was consummated but deliberately opted to sue for damages instead of seeking appraisal, section 1312(a) acts as a bar." *Steinberg*, 729

part of the rationale for restricting allegations of pre-corporate-action conduct to the statutory appraisal process is that these allegations *can* be "considered as part of the appraisal process" (*Id.* at 1058) because these allegations involve conduct occurring before (or perhaps during) the appraisal process. But this rationale disappears after the appraisal process ends and after the liable corporation dissolves.

Contrary to Lester's argument that the Trust is attempting to circumvent the exclusive remedy provided by the Dissenters' Rights Statute, it is Lester who attempted to evade this remedy by stripping LIA of its assets after the merger. As the Trust argues, the goal of Lester's post-merger conduct was to thwart the statute by preventing the Trust from collecting the judgment it obtained in the appraisal proceeding. Lester's proposed immunity would encourage and reward post-merger "trickery, evasion, procrastination, spoliation, botheration,"[5] shell games, and fourberies. Lester's proposed immunity makes no sense. As the bankruptcy court concluded, Lester acted with "fraudulent intent" and "manipulated LIA post-merger to promote an injustice against the Trust such that piercing the corporate veil is warranted." *In re Lee*, Adv. No. 13-59056, DE 62 at 24.

---

P.2d at 694. *Fleming* observed that commentators to *Steinberg* noted the plaintiffs there knew of the alleged breach of fiduciary duty and fraud *before* the merger, and had they not known until *after* the time for asserting appraisal rights passed, appraisal might not have been the exclusive remedy. *Fleming*, 676 N.E.2d at 1058 n.12. But, as *Fleming* noted, that concern was not implicated in *Fleming* given the timing. *Id.*

[5] Charles Dickens, *Bleak House*, chapter 1 (www.gutenberg.org/files/1023/1023-h/1023-h.htm, Donald Lainson, 1997) (1853).

The lower courts correctly concluded that the Trust may pierce LIA's corporate veil based on Lester's post-merger conduct.[6] Nothing in the plain language of the statute, or in Indiana case law, prevents such piercing.

## B. Third parties?

Lester argues only a third party can pierce a corporate veil, so the Trust cannot pierce LIA's corporate veil because as a minority shareholder, the Trust was part of LIA and not a third party to it.

But, again, the problems with this argument are simple. First, Lester likely forfeited this argument by failing to raise it in his summary judgment response before the bankruptcy court. *Reeves v. Davis* (*In re Davis*), 638 F.3d 549, 555 (7th Cir. 2011). Second, even absent forfeiture, this argument fails because once the Trust was "merged out," it ceased being a shareholder and became a third-party creditor of the corporation. Lester admitted as much. He argued to the bankruptcy court that he owed no fiduciary duties to the Trust because his "fiduciary duty to the shareholders ended when the Trust ceased being a shareholder and the merger took place." (Lee's Mem. Opp'n Mot. Summ. J., 4:15-CV-182,

---

[6] The Trust sought piercing based on pre- and post-merger conduct. The bankruptcy court denied piercing for pre-merger conduct in light of *Fleming*, but granted piercing for post-merger conduct. Of course, no party appealed the pre-merger issue to the district court, so that issue never percolated up to us. We express no opinion on whether, when, or in what circumstances piercing might be possible under Indiana law based on pre-merger conduct. But even if Indiana's Dissenters' Rights Statute bars piercing for pre-merger conduct, it does not bar piercing for post-merger conduct. The Trust pursued the statutory remedy and won a judgment. Now, the Trust merely seeks to collect on that judgment from the man behind the curtain who stripped LIA's assets after the merger.

DE 5-7 at 15 of 26.) He argued that once the merger happened, the minority shareholders "were no longer shareholders, but only creditors of the corporation." (*Id.*) Third-party creditors generally may obtain relief through piercing, if the piercing elements are met. The court committed no error in this regard.

### C. Complex economic questions involving fraud?

Finally, Lester argues that the decision to pierce a corporate veil involves a highly fact-sensitive inquiry ordinarily inappropriate for summary judgment, given the involvement of complex economic questions and allegations of fraud. But in this case, Lester admits "the facts are undisputed." (Appellant's Reply Br. at 3, 7.) And below he failed to designate any evidence creating a genuine issue of material fact and failed to include a Statement of Material Facts in Dispute in his summary judgment response brief, as required by local rule. S.D.Ind. B-7056-1(b); *see also* S.D.Ind. L.R. 56-1(b). Instead, he argues the facts give rise to conflicting inferences. But he did not properly present these alleged inferences to the bankruptcy court, and anyway the district court did an excellent job dismantling them, showing they "represent nothing more than baseless speculation, and that is not enough to stave off summary judgment." *Lee*, 2017 WL 685379, at *7. The court committed no error in this regard.

### IV. Conclusion

Lester engaged in post-merger conduct to strip LIA's assets to render the Trust's judgment worthless. The bankruptcy court issued a thorough, sound order concluding Lester is personally liable to the Trust for the balance due on the judgment. The district court issued a rigorous, solid order affirming the judgment of the bankruptcy court. We decline

Lester's invitation to certify a question to the Supreme Court of Indiana. Finding no error, we AFFIRM.