[No. H028633. Sixth Dist. Feb. 3, 2006.]

ALOK SINGHANIA et al., Plaintiffs and Appellants, v.
MOHAN UTTARWAR et al., Defendants and Respondents.

420

COUNSEL

Korda, Johnson & Wall, B. Ardell Johnson and John W. Clark for Plaintiffs and Appellants.

Shearman & Sterling, Jeffrey S. Facter, Raymond A. Just, Emily V. Griffen and Jiyoun Chung for Defendants and Respondents.

OPINION

**ELIA, J.**—This is an action for damages brought by plaintiffs Alok Singhania, Vidya Damle, Robert Adams, Amitabh Shah, and Rajesh Swamy (plaintiffs), former minority shareholders and former employees of Soft Plus, Inc., a California corporation (Soft Plus) that was merged with First Acquisition Co., Inc., a Delaware corporation and a wholly owned subsidiary of U.S. Interactive, Inc. (USI), a publicly traded Delaware corporation.[1] The essence of their allegations is that, in the course of the corporate merger, defendants Mohan Uttarwar, Vijay Uttarwar, and Vinay Deshpande (defendants), the former controlling shareholders and officers and directors of Soft Plus, breached their fiduciary duty to plaintiffs. The breaches essentially involved misrepresenting the procedures for exercise of the statutory right of shareholders to demand cash for their shares of Soft Plus common stock (collectively 722,916 shares) if they opposed the merger (see Corp. Code, § 1300 et seq.)[2] and failing to disclose upon request or concealing information bearing on plaintiffs' decision whether to dissent to the merger, including information related to the value of plaintiffs' Soft Plus shares and defendants' alleged self-dealing. Defendants' misconduct allegedly prevented plaintiffs from

---

[1] Although First Acquisition Co., Inc. may have been also known as Soft Plus, Inc., for purposes of clarity, we refer to it only as First Acquisition Co. and all further references to Soft Plus in this opinion are to the disappearing California company.

[2] All further statutory references are to the Corporations Code unless otherwise specified.

deciding whether to exercise their dissenters' rights and resulted in their recovering neither the value of their Soft Plus shares as dissenters nor their share of the merger consideration following the merger's close.

Defendants successfully demurred to plaintiffs' fourth amended complaint. Plaintiffs, who were given leave to amend, filed a correction to the fourth amended complaint, which merely changed an internal paragraph reference, and defendants again demurred. The trial court sustained defendants' demurrer without leave to amend and then entered judgment for defendants. Plaintiffs appeal.

Plaintiffs now argue that (1) their fourth amended complaint as corrected states a valid cause of action against defendants for breaches of fiduciary duty and (2) section 1312, subdivision (a), as interpreted by *Steinberg v. Amplica, Inc.* (1986) 42 Cal.3d 1198 [233 Cal.Rptr. 249, 729 P.2d 683] (*Steinberg*), does not bar this action. They further assert that the trial court erred in granting judgment on the pleadings as to the third amended complaint.

A.  *Allegations of Fourth Amended Complaint as Corrected*

The fourth amended complaint as corrected (Corrected Fourth Amended Complaint) alleges that defendants were the founders, controlling shareholders, officers, and controlling directors of Soft Plus. It indicates that plaintiffs, all former employees of Soft Plus, had acquired shares of Soft Plus common stock prior to the merger. Plaintiff Alok Singhania acquired his shares of common stock through a settlement with the company after his employment ended. The other plaintiffs obtained their Soft Plus common stock through exercise of their employee options.

The Corrected Fourth Amended Complaint indicates that on or about February 15, 2000, plaintiffs received a document entitled "Consent Solicitation and Information Statement and Notice of Approval of Merger" (hereinafter Information Statement) from Soft Plus. The complaint states that the Information Statement informed plaintiffs that Soft Plus had already received the requisite shareholder consent to approve the merger.

The Information Statement, a very lengthy document dated February 11, 2000, is attached as exhibit I to the complaint. The document informed shareholders that the Soft Plus board of directors had approved the terms of a merger with First Acquisition Co., a wholly owned subsidiary of USI, a merger agreement had been executed on February 1, 2000, and Soft Plus had already obtained the needed shareholder approval.

Shareholders were told: "In the proposed Merger, each share of Soft Plus' outstanding capital stock will be converted into the right to receive USI

Common Stock, cash, and a pro rata portion of an unsecured promissory note issued by USI in the principal amount of $80 million . . . ." The Information Statement explained the merger consideration in detail, including the specifics of converting the outstanding shares of Soft Plus common stock and preferred stock into USI common stock and how the amount of cash and the pro rata amount of the USI note to be received by Soft Plus shareholders who had not exercised their dissenters' rights would be calculated. It warned in large bold print that both the actual number of shares and the pro rata amount of the USI note to be received by Soft Plus shareholders would be reduced by certain amounts. It also warned that there would be restrictions on resale of USI common stock and stated in large bold print: "THE ACQUISITION OF THE USI COMMON STOCK PUSUANT TO THE MERGER INVOLVES IN-VESTMENT RISKS. INVESTMENT IN THE USI COMMON STOCK IS SUITABLE ONLY FOR PERSONS WHO HAVE NO NEED FOR AN IMMEDIATE CASH RETURN OR IMMEDIATE LIQUIDITY WITH RE-SPECT TO USI COMMON STOCK."

The Information Statement advised Soft Plus Shareholders to "carefully consider the risk factors set forth on pages 9 to 17 in USI's Prospectus included in Annex G," which was attached to the Information Statement. The Information Statement also contained a section entitled "Comparison of Rights of Holders of USI Common Stock and Soft Plus Common Stock."

In a section of the Information Statement entitled "Rights of Dissenting Shareholders," shareholders were informed in italicized print that, under California General Corporation Law (§ 100 et seq.), each Soft Plus share-holder had "the right to an appraisal of the fair value of their Soft Plus capital stock in the event of a merger." It informed shareholders wishing to exercise their dissenters' rights that they were required to strictly comply with the procedures set forth in "Annex I" and failure to do so might result in "termination or waiver" of such rights. It stated that "[u]nder the CGCL, holders of dissenting shares may require Soft Plus to repurchase for cash their dissenting shares at a price equal to the fair market value of such shares determined as of the day before the first announcement of the terms of the proposed Merger, excluding any appreciation or depreciation as a conse-quence of the proposed Merger, but adjusted for any stock split, reverse stock split or stock dividend that becomes effective thereafter."

The Information Statement specified steps that shareholders needed to take to obtain repurchase of their dissenting shares, including making a written demand that Soft Plus repurchase the shares at a specified price "[w]ithin 30 days after the date hereof" and submitting their share certificates to Soft Plus "within 30 days after the date on which notice of the approval by the outstanding shares was mailed to the shareholders . . . ." It also indicated that

shareholders had the right to bring an action to resolve any disagreement with Soft Plus regarding the price of dissenting shares.

Annex I to the Information Statement contained copies of sections 1300 to 1312. It also specified the governmental Web address where the provisions could be found.

The Corrected Fourth Amended Complaint alleges that defendants committed numerous breaches of fiduciary duty in their capacities as controlling shareholders (first cause of action), directors (second cause of action), and executive officers (third cause of action) of Soft Plus. Defendants allegedly misrepresented the requirements and procedures for dissenters' rights in that the Information Statement "failed to inform shareholders that the corporation was required to state the fair market value of the shares . . . and that such statement represented an offer by the corporation to purchase dissenting shares at that price." Defendants breached their fiduciary duty by omitting a statement of the fair market value of Soft Plus shares and by dictating that shareholders make a demand upon Soft Plus to purchase their shares at a specific price in order to exercise dissenters' rights, without the corporation having given any statement of price.

Defendants' alleged breaches also include, among others, their failure to provide upon request or concealment of information and documents essential for plaintiffs' decision whether to exercise their dissenters' rights in February and March 2000. The allegedly nondisclosed information includes the following facts: defendants issued a total of 5,000,000 shares of Soft Plus common stock and 750,000 shares of Soft Plus Series A preferred stock to themselves on December 8, 1998 for "the purpose of transferring a higher percentage of the corporate ownership to themselves at the expense of minority shareholders" and for which they paid no consideration; the board of directors determined on January 29, 2000 that the fair market value of Soft Plus shares was then $9.50 per share; the board of directors determined on March 7, 2000 that the fair market value of dissenting shares was $5.00 per share; Soft Plus solicited waivers from certain shareholders, including defendants, that stated the company's buyout price of $5.00 per share and provided that each undersigned shareholder waived any failure by Soft Plus to comply with the statutorily required "disclosure of the fair market value of dissenting shares . . . "; and defendants personally signed agreements to indemnify USI for Soft Plus's failure to comply with California dissenters' right law as a condition of closing the merger. The complaint alleges that the issuance of shares to defendants for no consideration improperly increased the defendants' portion of the merger consideration.

The complaint avers that Soft Plus merged with First Acquisition Co. on March 8, 2000. Plaintiffs were informed of the merger closing when they received a letter dated March 17, 2000 from USI's counsel.

The complaint states: "Defendants['] conduct herein alleged deprived plaintiffs of corporate records and information material to the merger and proximately caused plaintiffs to sustain damages in that the merger closed and the merger consideration was distributed while plaintiffs waited for documents and information to evaluate the merger, as a result of which plaintiffs received nothing for their collective 722,916 shares for which plaintiffs claim damages according to the proof thereof at trial." It also alleges that plaintiffs are entitled to punitive damages because defendants acted with fraud, malice, or oppression.

Plaintiffs do not plead facts showing that they were not entitled to participate in the merger, like other Soft Plus stockholders who did not dissent to the merger, as provided in the merger agreement. The merger agreement, annex A to the Information Statement, specified the process by which Soft Plus Shareholders surrendered their Soft Plus certificates "in exchange [for] USI Common Stock, a pro rata portion of Closing Cash Consideration, and a pro rata portion of the cash proceeds of the USI Note once the USI Note is paid in full in accordance with its terms as provided herein and therein." The merger agreement also provided: "In order for a Soft Plus Shareholder to receive the Merger Consideration to which such Soft Plus Shareholder is entitled, such Soft Plus Shareholder shall comply with the delivery requirements . . . ." Plaintiffs do not plead facts showing that they complied with the requirements for converting their Soft Plus stock to USI stock and receiving the cash consideration.

Finally, the complaint avers that USI filed for bankruptcy protection sometime after the merger and plaintiffs have no claims against Soft Plus or USI that survived the bankruptcy discharge.

## B. *Appeal*

As a preliminary matter, the plaintiffs' notice of appeal reflects that they are appealing from the final judgment and from the February 16, 2005 order sustaining defendants' demurrer to the Corrected Fourth Amended Complaint without leave to amend, the October 26, 2004 order sustaining defendants' demurrer to the fourth amended complaint with leave to amend, and the July 2004 order granting defendants' nonstatutory motion for judgment on the pleadings as to the third amended complaint with leave to amend. Defendants have requested that this court dismiss the appeals from those orders and review only the order sustaining respondents' demurrer to the Corrected Fourth Amended Complaint without leave to amend.

An appeal lies from a judgment of dismissal entered on an order sustaining demurrer. (Code Civ. Proc., § 904.1 subd. (a); see *Evans v. Dabney* (1951) 37 Cal.2d 758 [235 P.2d 604].) An appeal does not lie from an order sustaining a demurrer without leave to amend (*I. J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682]; *Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 651 [150 Cal.Rptr. 242, 586 P.2d 556]), from an order sustaining a demurrer with leave to amend (*Jeffers v. Screen Extras Guild, Inc.* (1951) 107 Cal.App.2d 253, 254 [237 P.2d 51]), or from an order granting a motion for judgment on the pleadings (*Little v. Mountain View Dairies* (1950) 35 Cal.2d 232, 234 [217 P.2d 416]). Therefore, the purported appeals from those orders in this case are dismissed.

This court, however, may review the "decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ." (Code Civ. Proc., § 906.) "[A]n order sustaining a demurrer . . . is generally reviewable on appeal from the final judgment in the action." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 128 [32 Cal. Rptr. 2d 275, 876 P.2d 1074]; see *Shepardson v. McLellan* (1963) 59 Cal.2d 83, 87–88 [27 Cal.Rptr. 884, 378 P.2d 108].) The sufficiency of an entirely superseded pleading, however, is not considered on review. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362]; *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311 [70 Cal.Rptr. 849, 444 P.2d 481].) Accordingly, we review the sufficiency of the Corrected Fourth Amended Complaint to withstand demurrer.

C. *Demurrer to Corrected Fourth Amended Complaint*

1. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) The court does not, however, assume the truth of contentions, deductions or conclusions of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (See *Hill v. Miller* (1966) 64 Cal.2d 757, 759 [51 Cal.Rptr. 689, 415 P.2d 33].) And when it is sustained without leave to amend, we decide whether there is a reasonable possibility

that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793]; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Cooper v. Leslie Salt Co., supra,* at p. 636.)" (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

### 2. Breaches of Fiduciary Duty

■ California law clearly recognizes that officers and directors owe a fiduciary duty to stockholders and controlling stockholders owe a fiduciary duty to minority stockholders. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 179 [132 Cal.Rptr.2d 490, 65 P.3d 1255]; *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 109–110 [81 Cal.Rptr. 592, 460 P.2d 464].) "The rule that has developed in California is a comprehensive rule of 'inherent fairness from the viewpoint of the corporation and those interested therein.' [Citations.] The rule applies alike to officers, directors, and controlling shareholders in the exercise of powers that are theirs by virtue of their position and to transactions wherein controlling shareholders seek to gain an advantage in the sale or transfer or use of their controlling block of shares." (*Jones v. H. F. Ahmanson & Co., supra,* 1 Cal.3d at p. 110.) "[T]he comprehensive rule of good faith and inherent fairness to the minority in any transaction where control of the corporation is material properly governs controlling shareholders in this state." (*Id.* at p. 112, fn. omitted.) For purposes of reviewing the demurrer, we accept the complaint's factual allegations regarding defendants' alleged breaches of fiduciary duty as true.

### 3. Remedies Available to Shareholders with Dissenters' Rights

■ Plaintiffs strive mightily to avoid the statutory bar of section 1312, subdivision (a), which makes a court action to determine fair market value the only judicial remedy ordinarily available to shareholders with statutory dissenters' rights who oppose a merger or other reorganization (see § 1300 et seq.). A shareholder entitled to vote on a reorganization transaction has the right to require the corporation to purchase the shareholder's "dissenting shares" for cash at their fair market value. (§§ 1300, subds. (a) and (b), 1304, 1312, subd. (a).) An eligible shareholder with dissenting shares must timely act to perfect dissenters' rights by taking three critical steps, as follows: (1) make a written demand upon the corporation to purchase specified dissenting shares based on the shareholder's statement of fair market value, which constitutes "an offer by the shareholder to sell the shares at such price," within the specified time (§ 1301), (2) submit the shares, if they are certificated securities, to the corporation within the specified time (§ 1302), and (3) if the

corporation and the shareholder disagree upon the fair market value of the shares, file a court action to determine fair market value within the specified time (§ 1304; see §§ 1309, subd. (c), 1300, subd. (b)).[3] The court may appoint appraisers in any action to determine fair market value (§ 1305) and, consequently, dissenters' rights are sometimes referred to as "appraisal rights" (see, e.g., *Steinberg, supra*, 42 Cal.3d at p. 1211).

■ Section 1312, subdivision (a), provides with certain statutory exceptions not here applicable: "No shareholder of a corporation who has a right under this chapter to demand payment of cash for the shares held by the shareholder shall have any right at law or in equity to attack the validity of the reorganization or short-form merger, or to have the reorganization or short-form merger set aside or rescinded . . . ." The California Supreme Court has made clear this provision generally makes an action to determine fair market value the sole remedy available to shareholders with dissenters' rights and generally precludes actions for damages. (See *Steinberg, supra*, 42 Cal.3d at p. 1214.)

■ A statutory exception to the bar of section 1312, subdivision (a), is the dissenters' right to bring "an action to test whether the number of shares required to authorize or approve the reorganization have been legally voted in favor thereof." (§ 1312, subd. (a).) Such an action suspends proceedings to determine the fair market value of the dissenting shares. (§ 1310; see §§ 1304, 1305.) "An action to test whether the shares were 'legally voted' arguably might permit challenges such as whether the meeting was properly called, and proper notice given to all shareholders; whether there were adequate disclosures made in soliciting proxy votes; the validity of proxy votes, the correctness of the vote tallies, etc." (Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2005) ¶ 8:363, p. 8–63.) Plaintiffs' present action is not seeking to challenge the authorization of the merger.

In *Sturgeon Petroleums, Ltd. v. Merchants Petroleum Co.* (1983) 147 Cal.App.3d 134 [195 Cal.Rptr. 29], an appellate court considered the scope of section 1312, subdivision (a). That case involved an action for damages "alleging breach of fiduciary duty, fraud, conspiracy, and violation of California Corporate Securities Law." (147 Cal.App.3d at p. 137.) The court rejected the appellant's claim that "appraisal is not the exclusive remedy of a dissenting shareholder who has been defrauded" and concluded that the most reasonable interpretation of section 1312 is that the appraisal process remains the exclusive remedy of a shareholder not coming within the statutory

---

[3] The action may also be filed by any interested corporation but, as a practical matter, a corporation is unlikely to file an action since dissenters' rights are lost if no action is initiated. (See 2 Marsh, Finkle, & Sonsini, Marsh's Cal. Corporation Law (4th ed.) § 10.05[A], p. 20-24.)

exceptions to its prohibition. (147 Cal.App.3d at pp. 139–140.) It upheld the grant of summary judgment entered against shareholders, who had begun the process of perfecting dissenters' rights against the company to be acquired but reached an impasse on the buyout price. (*Id.* at pp. 136–137, 141.) The court indicated that the price of dissenting shares presumably would be adjusted in the appraisal action, which had been filed by the acquiring company, if the shareholder established that alleged misconduct negatively affected the shares' fair market value. (*Id.* at pp. 137, 141.)

Subsequently, in *Steinberg, supra,* 42 Cal.3d 1198, the California Supreme Court generally approved the *Sturgeon Petroleums, Ltd.* decision, although it left open the question whether a nonstatutory exception to section 1312, subdivision (a), might exist for a damages action based upon misconduct of which a shareholder was unaware prior to consummation of a merger. (42 Cal.3d at p. 1214.) In *Steinberg,* a shareholder, who had purchased shares during a public offering, accepted payment for his 50 shares without dissent as part of a merger and then filed a class action after the merger was completed. (*Id.* at pp. 1202–1203, 1211.) It was alleged that the prospectus for the public offering failed to mention that the company was searching for a merger partner and misstated that "the proceeds of the sale would be used to expand and improve [the company's] business" whereas the proceeds were actually to be "used to pay off [the company's] debts and improve its attractiveness as a merger partner." (*Id.* at p. 1206.) The high court viewed these allegations as part of an attack on the validity of the merger. (*Ibid.*)

"The gravamen of the remaining allegations [was] that defendants breached their fiduciary obligation in agreeing to the merger terms, and in the process engaged in self-dealing and other breaches of duty" and, thereby, "obtained substantial benefits for themselves, resulting in the payment of an unfairly low price for the shares of the public shareholders." (*Steinberg, supra,* 42 Cal.3d at pp. 1206–1207.) The primary facts alleged to support these breach of fiduciary duty claims were "revealed in the proxy statement sent to shareholders before the meeting at which the merger was approved." (*Id.* at p. 1207, fn. omitted.)

The high court in *Steinberg* clarified that section 1312, subdivision (a), prohibits both an action to enjoin or unwind a merger (*Steinberg, supra,* 42 Cal.3d at p. 1213) and "an action for damages based on the fact that a merger has taken place" (*id.* at p. 1214). It framed the pivotal issue before it as "whether under section 1312[, subdivision] (a) a minority shareholder who is aware of the facts underlying his claim of breach of fiduciary duty may choose whether to seek appraisal or to allow the merger to proceed without dissent and to pursue an action not only for the fair market value of his shares (the same remedy he would obtain by appraisal), but for exemplary damages as

well, and in the process hold individual corporate officers and others involved in the merger liable for such damages." (*Id.* at p. 1207.) The court noted that it was "not concerned with a claim that defendants acted fraudulently by concealing or misrepresenting the terms of the merger" and the plaintiff was not contending that "he was unaware of his right to appraisal as a result of defendants' alleged misconduct." (*Ibid.*)

The Supreme Court observed that *Sturgeon* had "held that a shareholder may litigate his claim of misconduct in an appraisal proceeding, and to the extent he is able to prove that the value of his shares was diminished by misconduct in connection with the merger, his recovery could be adjusted in that proceeding. ([*Sturgeon Petroleums, Ltd. v. Merchants Petroleum Co., supra,*] 147 Cal.App.3d 134, 141 [195 Cal.Rptr. 29].)" (*Steinberg, supra,* 42 Cal.3d. at p. 1209.) The Supreme Court's concern with adopting a different approach focused upon the risk to legitimate mergers posed by actions for damages.

The high court reasoned in part: "[S]ome of the evils which an action for appraisal was designed to avoid would occur if a minority shareholder, fully informed as to the facts underlying his claim of breach of fiduciary duty, was permitted to bring an action for damages in excess of the fair market value of his shares against the corporation and individual wrongdoers connected with the merger. The threat of such litigation could, like an action to set aside a merger, prevent the consummation of reorganizations which would benefit the majority and the corporation as a whole. Or the corporation might be pressured into making concessions to the minority which would be unwarranted absent such a threat . . . . The prospect of personal liability of those who arranged the merger, including liability for punitive damages, would be almost as powerful a disincentive to legitimate mergers as a threat to unwind the merger." (*Steinberg, supra,* 42 Cal.3d at p. 1210.)

The high court further stated: "[T]he aim of appraisal is to allow mergers which are advantageous to the corporation to proceed, while assuring that minority shareholders receive a fair value for their shares. It seems clear that a minority shareholder who, like plaintiff, claims that his shares were undervalued because of self-dealing and other misconduct by corporate insiders cannot obtain a fair value for his shares unless he is afforded the opportunity to demonstrate that the misconduct he alleges has in fact occurred. The question is whether he must do so in an action for appraisal or whether he may forego that remedy and seek damages." (*Steinberg, supra,* 42 Cal.3d at pp. 1208–1209.) The court concluded: "[A]t least in a case such as this, where the plaintiff was aware of all the facts leading to his cause of action for alleged misconduct in connection with the terms of the merger prior to the

time the merger was consummated but deliberately opted to sue for damages instead of seeking appraisal, section 1312[, subdivision] (a) acts as a bar." (*Id.* at p. 1214.)

In this appeal, plaintiffs maintain that they should be entitled to bring an action for damages under the particular circumstances of their case despite section 1312, subdivision (a). They advance two slightly different arguments and, in both, they seek to distinguish *Steinberg.*

Plaintiffs' first argument is focused on the defendants' failure to comply with dissenters' rights law by not including "a statement of the price determined by the corporation to represent the fair market value of the dissenting shares" in Soft Plus's notice of approval of the merger as required by section 1301, subdivision (a). Plaintiffs contend in effect that a statement of price is a prerequisite to application of dissenters' rights law and defendants' refusal to comply with this requirement means that plaintiffs were not restricted to an action to determine fair market value and defendants left themselves open to an action for damages.

The second argument is essentially that defendants' misconduct precluded them from making a timely or informed decision to either participate in the merger or pursue their dissenters' rights and, thereby, "deprived them of the benefits of the merger." Plaintiffs declare that "defendants used fraud as a tool to keep plaintiffs from making a decision to participate in the merger or exercise their dissenters' rights." They maintain that *Steinberg* does not apply because they were not aware of all the facts supporting this action prior to the time the merger was consummated.

In our view, the alleged facts do not remove plaintiffs from the ambit of section 1312's bar. First, despite an omission of a statement of fair market value in the Information Statement and the Information Statement's instruction requiring a demand from shareholders without first providing any such statement, the complaint does not allege that plaintiffs were unaware of the corporation's statutory obligation to state a fair market value or their statutory dissenters' rights. In fact, the Corrected Fourth Amended Complaint shows that, as part of the Information Statement, plaintiffs received a copy of the applicable statutory provisions setting out their shareholder rights and the corporation's obligations.

Second, the complaint does not allege facts showing that Soft Plus was required by law to physically hand over the information and documents requested by plaintiffs (see, e.g., §§ 1600, 1601 [statutory rights of inspection]) or that plaintiffs lacked a remedy to enforce any right to inspection during the statutory period for exercise of their dissenters' rights.

Section 1600 provides a shareholder with the right to inspect and copy the record of shareholders during usual business hours upon proper written demand. Section 1601 provides a shareholder with a right to inspect and copy "[t]he accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, and of any foreign corporation keeping any such records in this state or having its principal executive office in this state" "at any reasonable time during usual business hours" "for a purpose reasonably related to such holder's interests as a shareholder . . . ." Section 1601 affords "no more than a right to inspect and copy records at the company office" and does not "impose on the corporation an affirmative duty to respond to written requests for modes of disclosure falling outside the scope of the statute." (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1263, 1265 [18 Cal.Rptr.3d 187] [corporation had no duty to respond to or comply with shareholder's written demand for monthly financial reports].)

■ A shareholder has recourse to the courts if a corporation does not comply with a lawful demand for inspection of corporate records. (See § 1603 [superior court has the power to enforce a lawful demand for inspection]; see also Code Civ. Proc., § 1085.) A court may award "reasonable expenses incurred by such holder, including attorneys' fees," against a corporation where a shareholder must resort to a court action as a result of the corporation's unjustified failure to comply with a proper demand to inspect records. (§ 1604.)

■ Plaintiffs have not cited any authority establishing that shareholders have expanded rights to demand production of or access to corporate records for the purpose of deciding whether or not to exercise their dissenters' rights or that corporations have a corresponding affirmative duty to provide such records. Furthermore, any failure of a corporation to comply with a lawful demand for inspection for the purpose of evaluating whether to pursue dissenters' rights is a circumstance that is known to and may be remedied by a dissenting shareholder. Consequently, we conclude that section 1312, subdivision (a), precludes dissenters, after a merger is completed, from seeking damages based upon alleged breaches of fiduciary duty involving a failure to comply with a lawful demand for inspection by dissenters seeking to evaluate whether to exercise their dissenters' rights.

Third, the same concerns are at issue whether the corporation to be acquired offers a price below the true fair market value or fails to state a price altogether. The tension in either case is between allowing mergers that are advantageous to the corporation to proceed expeditiously and ensuring that minority shareholders receive fair value for their shares. (See *Steinberg, supra,* 42 Cal.3d at p. 1208.) Plaintiffs' proposed rule, which would expose controlling

shareholders, officers, and directors to lawsuits when a notice of approval of a reorganization fails to specify a buyout price, could very well lead to the very evils that the *Steinberg* court sought to avoid.

Significantly, it is not alleged that Soft Plus failed to mail shareholders "a notice of the approval of the reorganization by its outstanding shares (Section 152) within 10 days after the date of such approval," or failed to provide a copy of sections 1300 to 1304, or failed to give "a brief description of the procedure to be followed if the shareholder desires to exercise the shareholder's right under such sections" with its notice of approval. (§ 1301, subd. (a).) While we recognize that procedures for cashing out contemplate that the corporation will make an initial determination of fair market value before dissenters make their demand for purchase, we do not perceive a sound reason for completely derailing the statutory buyout procedure where a notice of a reorganization's approval omits a statement of price but provides the full statutory text of sections 1300 to 1304, as was done in this case.

■ Shareholders on notice that a corporation is statutorily obligated to provide "a statement of the price determined by the corporation to represent the fair market value of the dissenting shares" and that such statement "constitutes an offer by the corporation to purchase" such dissenting shares at the price stated (§ 1301, subd. (a)) can act to protect their interests as potential dissenters by promptly demanding a buyout price from the corporation. If unsuccessful, such shareholders can seek judicial relief to compel the corporation to immediately provide a statement of the buyout price as statutorily required (§ 1301, subd. (a)). (See Code Civ. Proc., § 1085 ["A writ of mandate may be issued by any court to any . . . corporation . . . to compel the performance of an act which the law specially enjoins . . ."]; see also Code Civ. Proc., §§ 1027, 1032 [costs recoverable by prevailing party].)

In this case, plaintiffs did not allege in their Corrected Fourth Amended Complaint that they were unaware of Soft Plus's duty to provide a statement of price, that they took any action to obtain a buyout price from Soft Plus, or that they perfected their dissenters' rights. Even though defendants allegedly did not inform plaintiffs that Soft Plus's board had belatedly set a fair market value for dissenting shares, the shareholder waiver forms attached to the complaint indicate that the signatories, unlike plaintiffs, had tendered their shares to Soft Plus. The dissenters' rights law anticipates that a corporation and an individual shareholder seeking to cash out may need to negotiate to reach an agreement regarding the fair market value. (See § 1306 [agreements fixing fair market value].) No facts were alleged demonstrating that the corporation was unwilling to pay the same price to plaintiffs had they made a demand upon Soft Plus for purchase of their dissenting shares.

■ In any event, the statutory process safeguards the right of any minority shareholder to cash out for fair market value rather than accept the economic risks of a proposed reorganization. By law, the fair market value of the dissenting shares must be "determined as of the day before the first announcement of the terms of the proposed reorganization or short-form merger, excluding any appreciation or depreciation in consequence of the proposed action, but adjusted for any stock split, reverse stock split, or share dividend which becomes effective thereafter." (§ 1300, subd. (a).) Thus, the buyout price, whether or not an implicit term of a proposed merger as asserted by plaintiffs, is a statutory amount equal to the fair market value, which a corporation is obligated to pay and any dissenter wishing to cash out is obligated to accept.

■ Where the parties end up in court because they cannot agree on the fair market value (§ 1304) and the appraised value exceeds the value set by the corporation, which definitely will be the situation where a corporation fails to specify any value, the corporation must pay the costs of the action. (§ 1305, subd. (e).) Those costs include reasonable compensation to the appraisers and "in the discretion of the court attorneys' fees, fees of expert witnesses and interest at the legal rate on judgments from the date of [the shareholder's] compliance with Sections 1300, 1301 and 1302 if the value awarded by the court for the shares is more than 125 percent of the price offered by the corporation under subdivision (a) of Section 1301." (§ 1305, subd. (e).) This cost provision is intended to strongly encourage the fair treatment of dissenters. (See Legis. Com. com. (1975)—Assem. [Corrected], 23E West's Ann. Corp. Code (1990 ed.) foll. § 1305, p. 433.) It generally will protect a dissenting shareholder who, in order to obtain fair market value for dissenting shares, must engage the services of professionals and pursue court action against a corporation that failed to state the fair market value of dissenting shares.

The purpose of statutory dissenters' rights is to "permit a shareholder to be 'cashed out' in the event of a reorganization which changes the nature of the business beyond that contemplated by the shareholder." (Legis. Com. com. (1975)—Assem. [Corrected], 23E West's Ann. Corp. Code (1990 ed.) foll. § 1300, pp. 424–425.) "Appraisal rights protect the dissenting minority shareholder against being forced to either remain an investor in an enterprise fundamentally different than that in which he invested or sacrifice his investment by sale of his shares at less than a fair value. [Citation.]" (*Jones. v. H.F. Ahmanson & Co., supra,* 1 Cal.3d 93, 117.) Plaintiffs do not allege in their complaint that defendants misrepresented or concealed material information regarding the nature of USI's business or the effect of the merger on their investment. If plaintiffs did not want to participate in the proposed merger and be invested in USI, the exact law concerning their dissenters' rights was at hand, as was the means by which to exercise those rights.

■ Although plaintiffs are vigorously maintaining that this action is "neither a cause of action for deprivation of appraisal rights nor a cause of action for deprivation of merger consideration" and seek to make defendants liable for plaintiffs' inaction, plaintiffs were simply not legally able to postpone the decision whether to exercise dissenters' rights beyond the statutory timeframe. A failure to timely perfect dissenters' rights is a de facto choice by a shareholder to accept a merger or other reorganization and forgo dissenters' rights. The allegation in the complaint that "[d]efendants' conduct herein alleged deprived plaintiffs of corporate records and the information described in paragraph 42 of this complaint and proximately caused plaintiffs to sustain damages in that the merger closed and the merger consideration was distributed while plaintiffs waited for documents to evaluate the merger" does not help plaintiffs avoid the bar of section 1312 because, by operation of law, they lost possible dissenter status when the time for exercising dissenters' rights expired.

We assume for purposes of this appeal that an action for damages might be available where fraud or breaches of fiduciary duty cause a shareholder to go along with a reorganization, based upon misinformation or nondisclosures material to a decision whether to exercise dissenters' rights, and the shareholder would have cashed out as provided by dissenters' rights law had the shareholder known the true facts. Although plaintiffs state on appeal that they learned through discovery that defendants gave themselves Soft Plus stock without fair consideration, plaintiffs do not allege in their complaint or assert on appeal that they would have exercised their dissenters' rights had defendants timely disclosed their alleged self-dealing. Although implicitly the value of their Soft Plus shares might have been greater if additional shares had not been issued for no consideration as alleged, plaintiffs adamantly maintain that "[t]his case does not arise from a disagreement over the value of Soft Plus' shares" and it is not an action for "deprivation of . . . appraisal rights." Plaintiffs' existing allegations are insufficient to avoid the exclusivity of an action to enforce dissenters' rights and they can no longer recover the fair market value of their Soft Plus shares, as they would have had they perfected their dissenters' rights.

We do not address whether an action for damages might be available where a shareholder elects to exercise dissenters' rights but subsequently discovers the shares were purchased for less than full fair market value due to fraud or breaches of fiduciary duty, the facts of which were unknown to the shareholder before the buyout. That factual scenario is not before us.

Finally, we do not address whether an action to recover damages might be available where breaches of fiduciary duty in the management and control of

the disappearing company adversely affect the financial interests of a shareholder who forgoes dissenters' rights and accepts a merger or other reorganization. Plaintiffs have made plain that they are not alleging that "distributing the merger consideration while [they] waited for documents to evaluate the merger was a breach of fiduciary duty." They insist that this action is not an action for "deprivation of the merger consideration" and they are not seeking damages for the deprivation of merger consideration. Plaintiffs do not allege that defendants' breaches of fiduciary duty caused them to receive fewer shares of USI either.

In sum, we see no policy reason for allowing plaintiffs to circumvent section 1312, subdivision (a), as it has been construed, based upon Soft Plus's failure to set a buyout price or its failure to comply with shareholders' demands for access to records or information for the purpose of deciding whether to exercise dissenters' rights, since these alleged failures were known to them at the time. As discussed, a legal entitlement to a corporate statement of fair market value or to inspection of corporate records may be rectified by judicial relief in tandem with the buyout process. Since the Corrected Fourth Amended Complaint's factual allegations do not show that plaintiffs were either wrongfully deprived of either dissenters' status or wrongfully deprived of merger consideration, we conclude that the complaint does not state facts sufficient to constitute a cause of action. Lastly, plaintiffs have not shown a reasonable possibility that the complaint may be amended to state a cause of action.

### D. *Judgment on the Pleadings*

Plaintiffs' third amended complaint contained a cause of action for breach of fiduciary duties and a cause of action for violation of California securities laws. Defendants brought a nonstatutory motion for judgment on the pleadings[4] against the plaintiffs' third amended complaint on the ground that shareholders are statutorily required to make a demand on the corporation for purchase to preserve their dissenters' rights even if Soft Plus failed to state a buyout price and plaintiffs, who failed to make such a demand, were "statutorily precluded from claiming injury based on their alleged lost dissenter's rights . . . ." The motion was argued on July 6, 2004. The court granted defendants' nonstatutory motion with leave to amend the third amended complaint. On appeal, plaintiffs argue that the trial court erred in granting defendants' motion because shareholders are required to make a demand for purchase only after the corporation has fully complied with section 1301, subdivision (a), which includes stating a buyout price.

---

[4] Code of Civil Procedure section 438 governing motions for judgment on the pleadings was added in 1993. (Stats. 1993, ch. 456, § 5, pp. 2524–2527.) We do not address the validity of a nonstatuory motion.

Plaintiffs filed a fourth amended complaint following the court's ruling on the nonstatutory motion for judgment on the pleadings. By doing so, plaintiffs waived any error on the part of the trial court in making that ruling. (See *Sheehy v. Roman Catholic Archbishop of San Francisco* (1942) 49 Cal.App.2d 537, 540–541 [122 P.2d 60].) Consequently, we do not address plaintiffs' assignment of error regarding the court's ruling on the motion.

The judgment is affirmed.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 17, 2006, S141847.