Filed 10/20/25  Estate of Levine CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Estate of WILLIAM DAVID LEVINE, Deceased. | B328940 |
| VICTOIRE HOVLAND,<br><br>Objector and Appellant,<br><br>v.<br><br>GREGORY LEVINE et al., as Trustees, etc.,<br><br>Petitioners and Respondents. | (Los Angeles County Super. Ct. No. 22STPB01905) |

APPEAL from orders of the Superior Court of Los Angeles County, Jonathan L. Rosenbloom, Judge.  Reversed and remanded with directions.

Honey Law Group and Jennifer M. Honey; Schindler Eyrich and John F. Eyrich for Plaintiff and Appellant.

Weinstock Manion, Jessica G. Babrick, and Andrew G. Smith for Defendants and Respondents.

Victoire Hovland (Hovland) petitioned the probate court for an order concerning ownership of a Bentley automobile she claimed she received as a gift from her late husband, William David Levine (Bill).  The probate court sustained without leave to amend a demurrer filed by Gregory Levine (Gregory) and Kimberly Ashley (Ashley), trustees of the William David Levine Trust dated December 14, 1993, as amended (the Trust).[1]  We consider whether the probate court correctly determined Hovland could not state a cause of action under Probate Code section 850, subdivision (a)(3)(B) (a statute that allows interested persons to petition for an order "[w]here the trustee has a claim to real or personal property, title to or possession of which is held by another") because the parties previously stipulated earlier in the proceedings that the Bentley could be excluded from an order granting a contested petition to confirm Trust assets.[2]

## I.  BACKGROUND

Although we are primarily concerned with the allegations in Hovland's petition, Bill's estate plan and a petition filed by the Trustees provide important context for the challenged demurrer ruling.

---

[1]     We will often refer to Gregory and Ashley collectively as "the Trustees."

[2]     Undesignated statutory references that follow are to the Probate Code.

2

*A.     Bill's Family and Pertinent Provisions of His Estate
         Plan*

Bill and Hovland married in December 2000.  Bill had two children from a prior marriage: Gregory and Ashley.  Bill and Hovland executed a premarital agreement providing, among other things, that each spouse would keep their property as separate property and Bill would grant Hovland a life estate in a Manhattan Beach home he owned as trustee of the Trust.

Bill amended and restated the Trust on August 14, 2019.  As pertinent here, the Trust provides for Gregory and Ashley to succeed Bill as Co-Trustees.  It further provides that the Manhattan Beach home is to be held in a separate marital trust for Hovland's benefit during her lifetime, Hovland is to receive household items from the Manhattan Beach home, and Gregory and Ashley are to receive other tangible personal property—with the residue going to a family trust (of which Gregory and Ashley are beneficiaries).

Concurrent with the 2019 amendment and restatement, Bill executed an instrument assigning his separate property to the Trust.  The instrument provides, "I hereby assign all of my separate property, real and personal, tangible and intangible, wherever located, whether now owned or hereafter acquired, to [the Trust]."  The instrument lists separate property including, but not limited to, "[a]ll tangible personal property, including, but not limited to . . . personal vehicles" and "[a]ll ownership interests in business entities, including, but not limited to, . . . limited liability companies . . . ."

3

*B.* *The Bentley*

As alleged in Hovland's verified petition, which we shall discuss in more detail, "[o]n Valentine's Day 2015, Bill surprised [Hovland] with a slightly used, powder blue Bentley Continental GT . . . wrapped in a massive bow. [Hovland] accepted the lovely Valentine's gift and, at all times since, has exclusively driven the vehicle."

Hovland "is informed and believes that Bill formed WDL Enterprises [(WDL)], a Montana limited liability company . . . for the purpose of holding and organizing title and to minimize tax and costs to car registrations for their ample collection of cars. The Montana entity is registered as an automotive dealership in Montana, which was called KB Enterprises." Hovland believes WDL's corporate files—including the Bentley's pink slip, registration, and insurance papers—were formerly kept in Bill's home office but are now in Gregory's possession.

*C.* *The Co-Trustees' Petition to Establish the Trust's Claim of Ownership to Certain Property, Including WDL and the Bentley*

Bill died in December 2020. The Trust became irrevocable at that time.

In April 2022, the Trustees filed a petition to establish the Trust's claim of ownership to certain property and for an order directing its transfer to the Trust. Specifically, the Trustees sought an order "confirming that Bill's interest in" specified assets "titled in Bill's individual name[ ] are assets of the Trust."

4

Among these assets was Bill's "100% membership interest in WDL Enterprises LLC, a Montana limited liability company."[3] In a supplement to their petition, the Trustees indicated WDL "was a single member LLC (a disregarded entity for tax purposes), and the accountant ha[d] confirmed that all income and deductions relating to the LLC were reported on [Bill's] individual tax returns."

The Trustees argued "[t]he [s]ubject [a]ssets [a]re [a]ssets of the Trust" because "Bill executed the [August 2019] [a]ssignment in order to express unequivocally his intent to vest in the Trust title to all of his assets." The Trustees asserted that, "through inadvertence, and because of his understanding that the [a]ssignment was sufficient to transfer all of his assets to the Trust, Bill failed to formally convey his interest in the [s]ubject [a]ssets into the name of the Trust." Citing *Estate of Heggstad* (1993) 16 Cal.App.4th 943, the Trustees argued "formal change of legal title to an asset is not necessary to transfer it effectively to a transferor's trust[ ] if a transferor's declaration reflects an express intent to establish a trust over such asset," and "Bill's unambiguous expression of such trust intent is sufficient to effectively transfer the [s]ubject [a]ssets to the Trust." They asked the probate court to exercise its authority under section 850, subdivision (a)(3)(B) to "issue an [o]rder confirming that the [s]ubject [a]ssets are assets of the Trust."

---

[3]     The petition also listed interests in 10 other business entities. In a supplement to the petition, the Trustees amended their prayer to exclude several assets as to which they had determined "the Trust is already the record owner."

5

Hovland filed a partial objection to the Trustees' *Heggstad* petition. She argued the Bentley was a gift to her, but Gregory and Ashley had "possession of the pink slip . . . and [would] not release it to [Hovland]." She stated she intended to file her own petition to confirm her ownership of the Bentley and asked the probate court to grant the Trustees' petition only "subject to the condition that [Hovland]'s pink slip and registration tags are currently the subject of a Probate Code section 850 Petition for their release." Alternatively, Hovland argued the Trustees' petition should not be granted before her petition was resolved "as it would usurp a 2015 gift from a loving husband to his cherished wife . . . ."

### D.    Hovland's Petition

The day after she filed her objections to the Trustees' *Heggstad* petition, Hovland filed her own petition for an "order determining entitlement to estate property, imposition of constructive trust, double damages and for attorney's fees and costs." (Capitalization omitted.) Hovland recounted the facts supporting her claim that Bill gave her the Bentley as a gift in 2015. She further alleged either WDL or KB Enterprises holds title to the Bentley, Gregory or Ashley has the pink slip and current registration tags, and Gregory threatened to take possession of the car.

As grounds for relief, Hovland's petition relied on two Probate Code provisions. She cited section 850, subdivision (a)(3)(B), which provides "[t]he trustee or any interested person" may petition the probate court "[w]here the trustee has a claim to real or personal property, title to or possession of which is held by another" and section 850, subdivision (a)(2)(C), which provides

6

"[t]he personal representative or any interested person" may petition the probate court "[w]here the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another." Hovland asked the probate court to determine she "is the rightful owner of the pink slip to the Bentley," to determine she "rightfully and currently holds title to the Bentley," to "[d]issolve" WDL "in such a manner as to transfer title of the pink slip to [her]," to direct the Trustees to convey the pink slip to her, to impose a constructive trust over the pink slip, to award her twice the value of the property recovered pursuant to section 859, and to issue any other orders deemed just and proper.

### E.    *Hearing and Ruling on the Trustees' Petition*

The probate court held a hearing on the Trustees' petition in October 2022. At that hearing, the Trustees' counsel noted Hovland's objection pertained only to the Bentley and proposed the court grant the Trustees' petition "as to all other assets, except for [WDL], which owns the car." Hovland's attorney recommended the court determine the Trustees' petition would have a protective claim over the subject matter of Hovland's petition seeking ownership of the Bentley. The Trustees' attorney reiterated that title to the car was held by WDL and again asked the court to grant the *Heggstad* petition as to all assets other than WDL.

Following this exchange, Hovland's attorney said she had "no objection" so long as "[the probate] court's order could except [WDL] and any title or registration to the car . . . . [¶] We just seek a protective claim so that we have our day under our [petition] for title to [Hovland's] vehicle." The Trustees' attorney

7

said she "would agree with that" and that was "what she was saying." Addressing Hovland's attorney, the probate court clarified, "So you would consent then to granting the [*Heggstad*] petition . . . with that carve out; is that right?" Hovland's attorney agreed.

The probate court remarked "[t]hat makes it easy" and worked with the parties to craft an order: "So the court is granting the petition . . . with the exception of what?" The Trustees' attorney answered, "With the exception of WDL Enterprises[,] LLC, a Montana limited liability company." Hovland's attorney added, "I would like the order to reflect the pink slip and title to the Bentley as well, because sitting here today I don't think any of us—well, I certainly can't testify that the Bentley is held by WDL. We think it is. We suspect it is. Since we don't have direct knowledge, we would like to carve out that specific asset in case it's in one of these other entities." The Trustees' counsel had no objection. The probate court then clarified it was granting the Trustees' petition except as to WDL and the Bentley.

Hovland's attorney then asked that she be given the Bentley's registration tags immediately because she did not expect a hearing on Hovland's petition in the near future. The probate court indicated that "[w]hat we just talked about" was "as far as [the] court [wa]s prepared to go." The court ordered counsel to "prepare and submit an order" granting the Trustees' petition "with the exception of WDL Enterprises and that certain Bentley automobile, whatever year and model it is." The probate court later (in December 2022) signed the order granting the Trustees' petition "except as to (i) that certain Bentley

8

automobile and (ii) the decedent's interest in WDL Enterprises, LLC, a Montana limited liability company."

### F. Further Proceedings on Hovland's Petition
#### 1. Hovland's supplement to the petition

In January 2023, the probate court posted probate notes listing several "matters to be cleared" with respect to Hovland's petition.[4] These included the observation that it did "not appear two parties involved with the property at issue, . . . KB dealership and/or WDL Enterprises, fall under any categories allowed for under Prob Code 850" and an instruction to "[p]rovide legal authority under Prob Code 850 that allows Petitioner to seek possession from an entity, i.e. KB dealership and/or WDL Enterprises . . . ."

Hovland filed a supplement to her petition addressing the probate notes. With respect to the issue of whether she was seeking possession of the Bentley "from an entity," Hovland acknowledged the Trustees "do not presently hold legal title to the Bentley," but she argued she could obtain relief under section 850 because the Trustees asserted a "claim" to the Bentley.[5]

---

[4] Los Angeles County Superior Court Local Rule 4.4(b) provides that "[t]he 'Matters To Clear' section of the Probate Notes informs the parties of additional documents that are necessary to justify approval of the petition. Counsel must clear the items noted under the 'Matters To Clear' section no later than 3:30 p.m. of the second court day preceding the hearing date."

[5] In addition to the statutory authority cited in her original petition (section 850, subdivisions (a)(2)(C) and (a)(3)(B)) Hovland also cited section 850, subdivision (a)(3)(A), which provides in pertinent part that any interested person may petition for an order "[w]here the trustee is in possession of, or holds title to, real

9

Hovland explained that she filed her petition before the probate court ruled on the Trustees' petition and, "[a]t the time [her] petition was filed, [it] was properly brought pursuant to Section 850(a)(3) based on the relief requested by [the Trustees] . . . to confirm ownership and the potential that the relief would be granted." She emphasized she was "not requesting a transfer from an entity, but rather . . . asserting a protective claim to personal property that may have been found a Trust asset if [the Trustees'] petition had been granted in full."

### 2. *The Trustees' demurrer and motion for sanctions*

The Trustees demurred to Hovland's petition. They argued "the Bentley is not and has never been an asset of" the Trust and "[t]his was even recently confirmed" in the probate court's ruling on the Trustees' petition. Because the Bentley was "not a [Trust] asset," because Hovland was "not trying to make it a [Trust] asset," and because "the actual title holder of the Bentley [was] not before th[e] [p]robate [c]ourt in this proceeding," the Trustees contended Hovland could not pursue a claim under section 850. The Trustees additionally demurred to Hovland's request for twice the value of the Bentley under section 859 and her request that the probate court impose a constructive trust over the Bentley based on the asserted failure of her section 850 claim. Separately, the Trustees also moved for sanctions against

---

or personal property, and the property, or some interest, is claimed to belong to another." Hovland did not elaborate on how the alleged facts entitled her to relief under that subdivision (i.e., subdivision (a)(3)(A)).

10

Hovland and her attorney for pursuing a frivolous petition in bad faith.

Hovland's opposition to the demurrer argued reliance on section 850 was proper both because the Trust already had an interest in the Bentley by virtue of Bill's assignment of WDL to the Trust and because the Trust claimed ownership of WDL and the Bentley. She argued the Trustees misrepresented the probate court's ruling on their petition, which included no affirmative finding that WDL and the Bentley are *not* Trust assets. In her opposition to the Trustees' separate motion for sanctions, Hovland defended the merit of her petition and asked the probate court to instead impose sanctions against the Trustees and their counsel for filing a frivolous demurrer and motion for sanctions.

### 3.    *Hearing and orders*

The probate court held a hearing on the Trustees' demurrer and motion for sanctions in March 2023. The judge presiding was not the same judge who ruled on the Trustees' petition a few months earlier.

The probate court articulated a tentative ruling on the record. The court acknowledged it understood Bill owned the Bentley through WDL, and "the ownership of that LLC was of the membership interest . . . held by him as trustee of his trust during his lifetime. [¶] However, after his death, ownership of that LLC and of the car itself was specifically carved out, I believe in connection with a *Heggstad* proceeding, and that I believe was at [Hovland's] request. [¶] So the net effect of that, as I see it, is that neither the car nor the limited liability company membership interest is subject to the trust proceedings.

11

And since we are here on that matter, I think for this court to make any decision would be outside of this court's jurisdiction. [¶] So as a result, I think that the—my tentative is to sustain the demurrer."

When Hovland's attorney argued Bill's assignment of his separate property to the Trust made WDL (and the Bentley) property of the Trust, the probate court asked whether the requested carve-out to the ruling on the Trust's petition did not "work against . . . [Hovland's] interest in terms of bringing [her] petition. . . . [¶] Had this [i.e., WDL] been properly held by the Trustee of the Trust, this may be a different conversation, as I said. But this was[,] at your request by virtue of your objections[,] completely outside of the Trust."

Hovland's attorney argued the probate court's earlier ruling made "no determination" as to whether WDL was a Trust asset, but "simply respect[ed] the priority of [Hovland's] claims under her 850 petition." The probate court read the prior order granting the Trustees' petition except as to WDL and the Bentley and stated, "I think that this makes clear that the car and the entity that owned it are not—are outside of the Trust." Hovland's attorney responded that "whether it's a matter for an estate, whether it's a special administration, whether—there's no argument [Hovland's] had control and possession, the Montana entity has had title. And there could be a special administration to transfer the title to the Trust or they haven't introduced it. Maybe it's already in the Trust. [¶] [Hovland] has her—she's entitled to a day in court under Probate Code section 850 to pursue her claim, and that's what this court [previously] recognized . . . . If the [Trustees] wanted to object, that was their opportunity to do so."

12

The Trustees' attorney argued that although his clients "obviously believe in the abstract that . . . [WDL] and the car eventually will, should belong in the Trust pursuant to the general assignment and all that," the earlier denial of their petition meant the Bentley was not presently in the Trust. As the Trustees argued it, "No matter what any document says prior to that order that it should be in the Trust, it just isn't. That is the point of a *Heggstad* petition when something is not in the Trust and you need to move it into the Trust. [¶] So if what [Hovland's attorney] is saying is correct, that means that there was no purpose for her to make that objection to the [Trustees'] petition. There was no purpose in this court making the order specifically carving it out. Because what is the point of keeping it out of the Trust if it is apparently in the Trust anyway[?]"

The probate court indicated it would be "following" the prior order "in finding that those two assets [i.e., WDL and the Bentley] are not part of the Trust. And by virtue of . . . not being part of the Trust, I don't believe that this court has jurisdiction under this trust case to make any rulings on that, on those two assets." Hovland's attorney countered that "whether title to [the] car is held in an entity or a trust, or an estate is irrelevant" because the Probate Code "grants broad and equitable jurisdiction over any claims to property held by [a] decedent." The probate court, however, remained of the view that Hovland could pursue her claim only with respect to Trust property and neither the car nor WDL were trust property. Seeing no way to "amend the papers" to get around that, the probate court granted the demurrer without leave to amend.

Turning to the motion for sanctions, the probate court ruled sanctions would be imposed because the "bright line between

13

trust assets and nontrust assets . . . is fairly, or should be, I think fairly known to experienced trust and estate counsel.  [¶]  And from the papers and by the papers here I mean, specifically, the meet and confer efforts that were made, I think [Hovland] should have backed down from the position that she was taking.  So the fact that [the Trustees] would otherwise incur legal fees for their stepmother's conduct is just, it's just not fair."  The probate court accordingly ordered Hovland and her attorney, jointly and severally, to pay sanctions in the amount of $15,772.50 to the Trustees.

## II.  DISCUSSION

The crux of Hovland's appeal from the orders sustaining the demurrer and imposing sanctions is whether the probate court correctly determined the Trustees have no "claim" to the Bentley within the meaning of section 850, subdivision (a)(3)(B) (recall that is the provision authorizing any interested person to file a petition "[w]here the trustee has a claim to real or personal property, title to or possession of which is held by another").  The probate court's determination on that score was incorrect.  The earlier ruling (by a different judicial officer) excluding WDL and the Bentley from its order confirming that certain assets belong to the Trust did not resolve the Trust's claim to the Bentley; indeed, the comments by counsel for the Trustees at the demurrer hearing revealed they had not abandoned their claim to the car.  That brings Hovland's cause of action within the ambit of section 850, subdivision (a)(3)(B) and the Trustees' counterarguments in this appeal—that this subdivision may only be used to bring assets *into* a trust and any other reading of the statute would lead to absurd consequences—are meritless.

## A.    A Threshold Issue: Appealability

"[A]n appeal may be taken from the making of, or the refusal to make" an order "[a]judicating the merits of a claim made under" section 850.  (§ 1300, subd. (k); see also Code Civ. Proc., § 904.1, subd. (a)(10) [providing that an appeal may be taken "[f]rom an order made appealable by the Probate Code"].)  However, where a demurrer is sustained without leave to amend, an appeal generally lies not from the order sustaining the demurrer, but from the judgment or order of dismissal.  (*Singhania v. Uttarwar* (2006) 136 Cal.App.4th 416, 425; *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1032, fn. 1; § 1300, subd. (k); Code Civ. Proc., § 904.1 [listing appealable judgments and orders].)

Hovland noticed her appeal from the order sustaining the Trustees' demurrer without leave to amend, and she acknowledges there is no judgment or signed order of dismissal.[6]  Nonetheless, where "'the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.' [Citation.]" (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.)  We follow that course

---

[6]    The probate court issued a minute order dismissing Hovland's petition with prejudice a couple weeks after it issued its order sustaining the Trustees' demurrer without leave to amend.

15

here and address Hovland's challenge to the order sustaining the demurrer on the merits.[7]

### B. Hovland's Petition States a Proper Section 850, Subdivision (a)(3)(B) Cause of Action

The Legislature enacted section 850 and related statutes in 2001. (Stats. 2001, ch. 49, § 1.) As explained in the Legislative Counsel's Digest, this legislation "revise[d], recast, and consolidate[d]" existing law "provid[ing] for the determination of claims brought to determine ownership of real or personal property claimed by an estate, a ward or conservatee, or a trustee, as specified." (Legis. Counsel's Dig., Sen. Bill 669 (2001-2002 Reg. Sess.).) "[T]he statutory scheme was designed to allow conveyances or transfers of real and personal property into or out of an estate, trust, conservatorship, or guardianship estate as part of an expedited court proceeding. Its aim was to allow probate courts to resolve controversies surrounding title to property [citations] and to "'determine rights in property'" involving estates. [Citation.]" (*Parker v. Schwarcz* (2022) 84 Cal.App.5th 418, 430; accord *Estate of Young* (2008) 160 Cal.App.4th 62, 75 [the statutory scheme "provides a mechanism for court determination of rights in property claimed to belong to a decedent or another person"].)

Section 850 provides that various "persons may file a petition requesting that the court make an order" under specific circumstances. (§ 850, subd. (a).) As should be clear by now, we

---

[7] Hovland's related challenge to the order granting the Trustees' motion for sanctions is properly before us pursuant to Code of Civil Procedure section 904.1, subdivision (a)(12).

16

are chiefly concerned with section 850, subdivision (a)(3)(B), which provides that "[t]he trustee or any interested person" may file a petition "[w]here the trustee has a claim to real or personal property, title to or possession of which is held by another."

The Trustees do not dispute that Hovland qualifies as an interested person within the meaning of section 850; section 48, subdivision (a)(1) defines "interested person" to include "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Thus, the only question is whether Hovland's petition adequately alleges the Trustees have "claim" to the Bentley. Our examination of that issue is de novo, and we accept the truth of properly pleaded material facts. (See, e.g., *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)

Section 850, subdivision (a)(3)(B) does not define a "claim." The Trustees do not argue subdivision (a)(3)(B) requires any specific type of claim, but they contend the ruling on their *Heggstad* petition conclusively establishes the Trust has no claim to WDL or the Bentley. That is not borne out by the ruling on the Trustees' petition, however, which does not address the merits of their claim to these assets. Moreover, the reporter's transcript of the earlier *Heggstad* petition hearing reveals all parties understood the exclusion of WDL and the Bentley from the *Heggstad* order was meant only to defer determination of ownership, not to adjudicate the Bentley as outside the Trust.

It is true, as the Trustees argue, they have not since "filed any sort of renewed petition," but that isn't the point. The Trustees identify no bar to filing a later renewed petition or other

17

means of confirming Trust ownership of the Bentley or WDL, and their attorney represented at the hearing on Hovland's petition that "the car *eventually will*, should belong in the Trust pursuant to the general assignment and all that."[8] (Emphasis added.) The as yet unadjudicated ownership of the Bentley, particularly when considered with the petition's allegations concerning who holds the physical title and registration certificate(s), suffices to state a "claim" subject to section 850, subdivision (a)(3)(B) adjudication.[9]

The Trustees' alternative argument, that section 850, subdivision (a)(3)(B) only contemplates a petition to bring assets *into* a trust, has no basis in the statutory text. To the contrary, the subdivision's incorporation of the term "interested person," which includes "any . . . person having a . . . claim *against* a trust estate" (§ 48, subd. (a)(1), italics added) strongly suggests the opposite is true. The Trustees respond that this construction of section 850, subdivision (a)(3)(B) would produce absurd

---

[8] Indeed, if the Trustees had finally renounced any claim to the Bentley there would have been little reason to oppose, rather than acquiesce in, Hovland's petition insofar as it sought to declare her the rightful owner of the vehicle.

[9] We do not read "claim" as used in that statute to be limited to claims that are the subject of pending legal action. The quiet title statute (Code Civ. Proc., § 760.020), which serves a similar purpose, is not so narrowly construed. (*Water for Citizens of Weed California v. Churchill White LLP* (2023) 88 Cal.App.5th 270, 281-282 ["A property owner may bring a quiet title action 'to determine any adverse claim whatever. For if the defendant by his answer disclaims all interest whatever, judgment may, nevertheless, be entered against him, though in such case it must be without costs'"].)

18

consequences because they believe it would mean that "wherever a trustee merely *claims* an interest in an asset in a filing with the probate court, this would somehow open them up for a claim against them for that same asset in perpetuity, even if the trustee is ultimately unsuccessful in obtaining the asset." As we have already explained, however, the Trustees have not "ultimately" failed to make WDL and the Bentley part of the trust—that issue was deferred and it has not yet been finally resolved.

The Trustees also contend it would be absurd for the probate court to issue an order concerning their claim to the Bentley because they "*do not have* the Bentley." It is not clear, however, why the Trustees believe they must "have" the Bentley in any sense for the probate court to issue a ruling as to their *claim* to the car. Moreover, our holding that Hovland has stated a cause of action for an order concerning the Trust's claim to the Bentley under section 850, subdivision (a)(3)(B) does not mean she is necessarily entitled to all the relief she seeks. We have taken her allegations as true at this stage of the proceedings and the viability of her factual allegations is not a matter we now decide.

C.    *The Order Granting Sanctions Is Reversed*

Because we reverse the probate court's order sustaining the Trustees' demurrer, we also reverse the order granting imposition of sanctions for filing a frivolous petition. We reject Hovland's request that we "direct the [p]robate [c]ourt to consider [her] request for attorney's fees against the [Trustees]."

19

DISPOSITION

The probate court's orders sustaining without leave to amend the Trustees' demurrer to Hovland's petition and granting the Trustees' motion for sanctions are reversed.  The matter is remanded for further proceedings consistent with this opinion, which holds Hovland has stated a proper claim for relief under Probate Code section 850, subdivision (a)(3)(B).  Hovland is awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM (D.), J.

20